IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **THE PREMCOR REFINING GROUP INC.**, <br><br> **Plaintiff**, <br><br> v. <br><br> **APEX OIL COMPANY, INC.**, *et al.*, <br><br> **Defendants**. | Case No. 17-cv-738-NJR-MAB |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss filed by Defendant Koch Industries Inc. (Doc. 141), a Motion to Dismiss filed by Defendant Koch Pipeline Company (Doc. 142), a Motion to Dismiss filed by Defendant Apex Oil Company, Inc. (Doc. 143), and a Motion to Dismiss filed by Defendants Arco Pipeline Company, Atlantic Richfield Company, BP Pipelines (North America) Inc., and BP Products North America Inc. (Doc. 144). For the reasons set forth below, the Court grants in part and denies in part the motions.

### FACTUAL & PROCEDURAL BACKGROUND

This case involves claims against eight defendants[1] brought pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act

---

[1] Plaintiff Premcor Refining Group Inc. and Defendant Equilon Enterprises, LLC d/b/a Shell Oil Products US have represented to the Court that they have reached a settlement (*See* Docs. 168, 178, and 186).

("CERCLA"), which seek recovery of costs allegedly associated with environmental contamination at a refinery located in Hartford, Illinois (Doc. 130, p. 1-2). Plaintiff Premcor Refining Group, Inc. ("Premcor") alleges that it has—at the direction and oversight of the Illinois Environmental Protection Agency ("IEPA")—undertaken a series of actions to address the release of hazardous substances at its Refinery in Hartford and, as a result, it has incurred and continues to incur response costs related to those actions (*Id*.). Premcor alleges that each defendant is liable to it under CERCLA for past and future response costs incurred by Premcor associated with addressing the hazardous substances at and around the Refinery (*Id*.).

Premcor also alleges that, in a judicially approved settlement agreement with the State of Illinois, Premcor resolved its liability under CERCLA for response actions and costs at the Refinery (*Id*.). Premcor alleges that it has incurred and continues to incur necessary costs of such response actions, in excess of Premcor's fair share of that liability, and therefore has a right of contribution against Defendants (*Id*.). The State of Illinois proceeding is referenced in the First Amended Complaint, and the Consent Order entered in that proceeding is attached to the First Amended Complaint (Doc. 130-1).

## LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff only needs to allege enough facts to state a claim

for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012). "When ruling on a motion to dismiss, a federal court may consider documents attached to the pleadings without converting the motion to dismiss into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the plaintiff's claims." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).

## ANALYSIS

Defendants' motions raise various overlapping arguments and the Court organizes and addresses them as follows.

### I. Petroleum Exclusion

All Defendants argue that Premcor's claims are barred by the CERCLA "petroleum exclusion." Premcor responds that the First Amended Complaint alleges releases of CERCLA hazardous substances from each Defendant and references substances that the petroleum exception does not cover.

To state a claim for a violation under Section 107(a), 113(f)(3)(B), and 113(g)(2) of CERCLA, Premcor must allege and establish a specific release or threatened release of a "hazardous substance into the environment." *See* 42 U.S.C. §§ 9607(a), 9613(f)(3)(B),

9613(g)(2). For purposes of CERCLA, the term "does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas)." 42 U.S.C. § 9601(14). This is commonly referred to as the "petroleum exclusion."

The parties dispute who bears the burden of proof related to the petroleum exclusion. This Court tends to agree with courts that have found that, because the petroleum exclusion is an exception to the coverage of the statute, defendants bear the burden of proof on the issue. *See, e.g., Organic Chemicals Site PRP Group v. Total Petroleum, Inc.*, 6 F. Supp. 2d 660, 663 (W.D. Mich. Feb. 3, 1998); *see also United States v. First City Nat'l Bank of Houston*, 386 U.S. 361, 366 (1967) (noting general rule that party claiming benefit of exception to statutory prohibition bears the burden of proof). Nonetheless, even if the Court were to find that Premcor has the burden of proof, that burden is satisfied at this stage of the proceedings.

Defendants argue that Premcor is attempting to disguise the fact that its allegations involve petroleum releases by referring to them as generic CERCLA "hazardous substances." More specifically, Defendants argue that the state court litigation demonstrates that this case is really about crude oil, petroleum, and petroleum products, which are not hazardous substances under CERCLA.

Premcor responds that several of the hazardous substances alleged are from

nonpetroleum related sources and some substances are merely commingled with petroleum. Premcor also responds that the 2013 State Complaint and resulting Consent Order similarly identified contaminants that were neither petroleum nor petroleum constituents. Thus, Premcor argues that the petroleum exclusion does not apply.

The Court has reviewed the allegations of the First Amended Complaint, and finds that it alleges contaminants outside of the petroleum exclusion and that commingling occurred. Premcor alleges that "numerous CERCLA 'hazardous substances' have leaked, been disposed of, and/or have otherwise been released from the Refinery, coming to be located in pits, lagoons, other surface areas and soils, at least some of which have migrated into subsurface areas including groundwater." (Doc. 130, p. 8). "The sources of these contaminants include, but are not limited to, pipelines, pits, lagoons, waste storage and disposal operations, tanks, wastewater collection and treatment units, and refining units owned and operated by Defendants." (*Id*.).

Premcor alleges that an "investigation of the contamination showed the presence of varying concentrations of constituents of concern and other CERCLA-listed hazardous substances, including but not limited to those listed in the Skinner List…." (Doc. 130, p. 9). Premcor alleges that the hazardous substances include but are not limited to buried tank bottoms, sludges, and other solid, liquid or semi-solid material (*Id*.). Premcor also alleges that "[c]omingled CERCLA contaminants include volatile organic, semi-volatile organic, and inorganic compounds." *Id*.

Accepting these allegations as true, the Court cannot accept Defendants' argument

that this case is only about petroleum products.² *See Tosco Corp. v. Koch Industries, Inc.,* 216 F.3d 886, 893 (10th Cir. 2000) (finding that the petroleum exclusion did not apply where hazardous wastes commingled with petroleum products in the soil and floating on the groundwater beneath the refinery); *see also United States v. Western Processing Co., Inc.*, 761 F. Supp 713, 717 (W.D. Wash. 1991) (holding that tank bottom sludge was covered by CERCLA because it contained "a rust-like scale of corrosion products from the oxidation of steel in the tank walls," which are "hazardous substances not normally found in refined petroleum fractions."). Thus, the Court finds that, based on the allegations of the First Amended Complaint, the petroleum exclusion does not bar Premcor's claims at this stage of the proceedings.

## II. Koch Pipeline Company LP

The First Amended Complaint refers to Defendants Koch Pipeline Company LP and Koch Industries Inc. f/k/a Wood River Oil & Refining Co., Inc. collectively as "Koch" (Doc. 130, p. 1). While Koch Industries Inc. f/k/a Wood River Oil & Refining Co., Inc. ("Koch Industries") is a former owner of the refinery, Koch Pipeline Company LP ("Koch Pipeline") is not (Doc. 132, p. 9-10). By lumping these two separate and distinct companies together, it creates confusion in the First Amended Complaint. For example, Premcor alleges that "[d]uring the periods that Koch, Old Sinclair/BP, and Old Clark/Apex ***owned and operated*** the Refinery, the companies discharged, disposed, deposited, dumped, spilled, leaked, placed and/or otherwise released CERCLA

---

² The Court does not find that the Consent Order, referenced in and attached as an exhibit to the First Amended Complaint, undermines these allegations (Doc. 132).

hazardous substances into or on the land at the Refinery . . . ." (Doc. 130, p. 8-9) (emphasis added). Due to the confusing nature of the allegations relating to Koch Pipeline, the Court finds that Premcor has failed to sufficiently plead that Koch Pipeline is liable under CERCLA. Accordingly, the First Amended Complaint against Koch Pipeline is dismissed without prejudice and with leave to re-file in order to plead its claims against Koch Pipeline with greater specificity.

### III. Cost Recovery Claim under Section 107

Defendants also argue that the entry of the Consent Order between Premcor and the State of Illinois is dispositive as to Count III for CERCLA Section 107 cost recovery. Count III specifically alleges a claim against all Defendants for recovery of response costs under Section 107(a) of CERCLA, citing 42 U.S.C. § 9607(a) (Doc. 130, p. 150). Defendants argue that, because Premcor has reached an agreement with the State of Illinois to fully and finally resolve Premcor's CERCLA liability at the Refinery, Premcor must proceed in this action under Section 113(f)(3)(B), and cost recovery under Section 107(a) is foreclosed.

Premcor responds that, although it is Premcor's position that the Consent Order is a judicially approved settlement that completely and entirely resolves Premcor's liability at the Refinery, until this Court so orders or Defendants so stipulate, Premcor can plead a cost recovery claim (under Section 107(a)) in the alternative to its contribution claim (under Section 113(f)). Premcor argues that Defendants' challenge to the Consent Order as a judicially approved settlement for purposes of Section 113(f) justifies pleading, in the alternative, under both Section 107(a) and Section 113(f).

"CERCLA, commonly known as the Superfund Act, 'shifts the cost of [an environmental] cleanup to the parties responsible for creating the hazard and away from taxpayers, who otherwise would be left to pick up the bill." *Refined Metals Corp. v. NL Industries Inc.*, No. 18-3235, 2019 WL 3955889, at *1 (7th Cir. Aug. 22, 2019) (citing *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 689 (7th Cir. 2014)). "The statute identifies who may be held liable; they are called 'potentially responsible parties' or PRPs in the jargon of environmental law." *Refined Metals Corp.*, 2019 WL 3955889, at *1. "If a PRP believes that it has paid or may become liable for paying 'cleanup costs in excess of its fair share' . . . the statute permits it to seek compensation from other PRPs." *Id.*

"There are two such routes available to someone seeking to recover from a PRP: a section 107(a) 'cost-recovery' action and a section 113(f) 'contribution' action." *Refined Metals Corp.,* 2019 WL 3955889, at *2 (citing *Bernstein v. Bankert*, 733 F.3d 190, 206 (7th Cir. 2013). "Whether a party must proceed under section 107(a) or 113(f) depends on the procedural posture of the claim." *NCR Corp.*, 768 F.3d at 690 (citing *United States v. Atlantic Research Corp.*, 551 U.S. 128, 139-40 (2007)). "If a party has already been subjected to an action under section 106 or 107, or has 'resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement,' it must proceed under section 113(f)." *Id.*; *see also Bernstein*, 733 F.3d at 206 ("[A] plaintiff is limited to a contribution remedy when one is available."); *Refined Metals Corp.*, 2019 WL 3955889, at *2 ("But if either statutory trigger for a section 113(f) contribution action is present—a qualifying

lawsuit under section 113(f)(1) or a qualifying settlement under section 113(f)(3)(B) — the plaintiff may proceed only under that provision.").

The First Amended Complaint alleges that Premcor, in a judicially approved settlement agreement with the State of Illinois, resolved its liability under CERCLA for response actions and costs at the Hartford Refinery site (Doc. 130, p. 2). The Consent Order confirms that the State of Illinois "releases and 'resolves' the Premcor Parties from, any and all liability, claims, orders, damages, costs, or penalties (collectively "Liabilities"), arising under any Environmental Laws, including CERCLA . . . ." (Doc. 132, p. 39). The Consent Order was approved by the Madison County Court on July 26, 2018. Although Defendants raised objections to entry of the Consent Order, the Consent Order was ultimately approved, and none of the Defendants filed an appeal. Accordingly, Premcor must proceed under Section 113(f), and the claim within Count III for cost recovery under Section 107(a) must be dismissed.[3]

### IV.  Contribution Claim under Section 113(f) against Apex

Apex argues that it settled its liability with the State of Illinois in 2016, and CERCLA's settlement bar precludes Premcor's Section 113(f) claim against Apex. Apex further argues that Premcor is collaterally estopped from bringing its Section 113(f) claim against Apex because Premcor's right to seek contribution from Apex has already been conclusively litigated in the Illinois Proceeding. Premcor responds that the plain language of the Apex Consent Order does not resolve Apex's liability with the finality,

---

[3] Because the Court finds that the Section 107(a) cost recovery claim must be dismissed, it is not necessary to address the statute of limitations argument as to this claim.

breadth, and specificity required for CERCLA contribution protection. Premcor further responds that collateral estoppel is inapplicable because federal courts have exclusive jurisdiction to adjudicate CERCLA claims.

Although not mentioned in the First Amended Complaint, Apex was a co-defendant with Premcor in the proceeding brought by the State of Illinois (Doc. 132, p. 1).[4] In September 2016, the State of Illinois and Apex entered into a good faith settlement of the State's claims under "all Environmental Laws," among others (Doc. 143-1). In that settlement, Apex made a $10,015,000 settlement payment, which would be used for environmental remediation of the Refinery (Doc. 143-1, p. 2, 10, 11, 15-17). The Madison County Court found the settlement was in good faith and, pursuant to state law, the court dismissed with prejudice Premcor's contribution claims against Apex (Doc. 143-2).

Section 113(f)(2)'s settlement bar provides that "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved

---

[4] Because Premcor attached the Premcor Consent Order and incorporated the Illinois Proceeding into its First Amended Complaint, the Court finds that it has made this proceeding central to its claims. Thus, the Court will consider documents filed in the Illinois Proceeding, which are attached to Apex's motion to dismiss. Additionally, even if Premcor had not incorporated the Illinois Proceeding into its First Amended Complaint, the Court may take judicial notice of public court documents in deciding a motion to dismiss. *See GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997) ("[I]f the finding taken from the prior proceeding is 'not subject to reasonable dispute,' then the court has satisfied the evidentiary criteria for judicial notice."); *see also Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) ("[F]ederal courts may . . . take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue."). The Court further notes that issues of law that involve contract interpretation may be resolved in a motion to dismiss. *Tierney v. Vahle*, 304 F.3d 734, 738-39 (7th Cir. 2002) (courts can consider documents outside the pleadings, like a contract, in ruling on a motion to dismiss, if the document is concededly authentic and central to the pleadings or the legal issue presented); *see also Sullivan v. Alcatel-Lucent USA, Inc.*, No. 12 C 7528, 2013 WL 228244, at *3 (N.D. Ill. Jan. 22, 2013) (noting that the court may independently examine a contract and determine whether it is sufficiently unambiguous that the Court may interpret the contract, as a matter of law, at the motion to dismiss stage).

settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). Apex "resolved its liability to . . . a State" when it entered into a settlement agreement with the State of Illinois and the State of Illinois "release[d] the Apex Parties from any and all liability, claims, orders, damages, costs or penalties . . . arising under any Environmental Laws" relating to the hazardous substances at the Refinery (Doc. 143-1, pp. 13-14). The term "Environmental Laws" is defined to mean "any federal, state or local law, statute, code, ordinance . . . relating to the protection of the environment or the protection of the health and safety of humans as it relates to environmental protection." (Doc. 143, p. 6).

The Court finds that the language "arising under any Environmental Laws" is unambiguous and includes CERCLA claims. *See Rumpke of Indiana, Inc. v. Cummins Engine Co.*, 107 F.3d 1235, 1242 (7th Cir. 1997) (the starting point for an analysis of a settlement agreement under CERCLA is "the language of the [agreement] itself."). The Apex Settlement did not reserve any rights relevant to any potential CERCLA claims. Nor did the Apex Consent Order need to specify each claim being released in order for contribution protection to be triggered. *See Hampton v. Ford Motor Co.*, 561 F.3d 709, 716 (7th Cir. 2009) (under Illinois law "a party need not enumerate the specific claims [it] is waiving in a general release"); *see* 42 U.S.C. § 9613(f)(2).

Premcor relies on the Seventh Circuit Court of Appeals case of *Rumpke of Indiana, Inc. v. Cummins Engine Co., Inc.*, 107 F.3d 1235, 1242 (7th Cir. 1997), to argue that settlements intending to confer contribution protection must explicitly include such

language. However, the issue in *Rumpke* was whether the scope of the settlement included certain sites. The Seventh Circuit explained that "the intent to sweep more than one site into a settlement agreement must appear far more plainly in the language of the agreement than we have here. Pulling a few words out, with strategic ellipses, from a boilerplate list, where the entire remainder of the consent decree deals with one and only one site, is not enough to accomplish the global settlement goal." *Id*. at 1243. Here, it is undisputed that the Apex Consent Order covers the same site addressed in Premcor's CERCLA contribution claim.

Premcor also argues that the Apex Consent Order does not fully resolve Apex's liability because Apex expressly disclaimed liability and the State of Illinois reserved its rights against Apex through the Apex Settlement. Premcor specifically cites to *Bernstein v. Bankert*, 733 F.3d 190 (7th Cir. 2013), for the proposition that there is no resolution of liability where parties choose to "leave the question of liability open through the reservation of rights, conditional covenants, and express disclaimers of liability." *Bernstein*, 733 F.3d at 212.

In *Bernstein*, the Seventh Circuit Court of Appeals found that a consent order between the EPA and the defendant did not resolve the defendant's liability to trigger a section 113(f)(3)(B) claim because the EPA provided a conditional covenant not to sue that was only effective when the private party completed remediation in the future, leaving liability unresolved until then. *Id*. at 213 ("[I]f the EPA had included an immediately effective promise not to sue as consideration for entering into the agreement,

the situation would be different."); *see also Refined Metals Corp.*, 2019 WL 3955889, at *3 (discussing *Bernstein* and noting that "[b]ecause [an immediately effective covenant not to sue] is present in this case, the mere fact that Refined refused to admit liability is not enough to exempt the 1998 Decree from the reach of section 113(f)(3)(B)."). Here, the State's release was conditioned only on Apex paying a certain amount, which was to occur within ten business days of the court's entry of the Apex Consent Order, and which has occurred. Thus, this case is distinguishable from *Bernstein*.

The Court also is not convinced that Apex's mere refusal to admit liability denotes unresolved liability. As the Sixth Circuit has explained, "[a]dmitting liability is not the same as resolving liability" and "settlement agreements in other contexts frequently include such non-admission clauses." *Florida Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 1016 (6th Cir. 2015) (refusing to rely upon the non-admission of liability to find that an administrative order by consent was not an administrative settlement).

Additionally, courts in other circuits have held that a settlement agreement need not expressly refer to or arise out of litigation of CERLCA claims to constitute a settlement of CERCLA claims. *See Asarco LLC v. Atlantic Richfield Co.*, 866 F.3d 1108, 1119-21 (9th Cir. 2017); *see also Trinity Industries, Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 136 (3d Cir. 2013); *see also Niagara Mohawk Power Corp. v. Chevron, U.S.A., Inc.*, 596 F.3d 112, 126 n. 15 (2d Cir. 2010) (taking issue with a prior Second Circuit holding and indicating agreement with the EPA's position that a CERCLA-specific settlement agreement is not necessary to maintain a § 113(f)(3)(B) contribution action).

Likewise, the Court agrees with Apex's assertion that the fact that the Apex Consent Order refers to Illinois statutory terms for its definitions of the terms "hazardous substance" and "person" shows only breadth of the agreement, and is not a limiting feature. The Illinois statutory definition of those terms either expressly incorporates CERCLA provisions or is equally, if not more, broad than the CERCLA definition.

Thus, the Court finds that the settlement bar set forth in CERCLA § 113(f)(2) precludes Premcor's claims against Apex and Apex should be dismissed with prejudice.[5]

### V.     Double Recovery Pursuant to Section 114(b)

Apex also moved to dismiss pursuant to Section 114(b) arguing that Premcor's claims for recovery of costs for which it has already received compensation, including Apex's payment of $10,015,000, as well as from any other third-party source should be precluded and dismissed from this lawsuit. Other defendants "joined in" on this argument, without any individual argument or analysis. Now that Apex has been dismissed, this argument is obviously moot as to Apex. The way in which this argument applies to other defendants is not clear to the Court and possibly more appropriate for summary judgment. Accordingly, the motion to dismiss on this ground is denied without prejudice.

#### CONCLUSION

For the reasons set forth above, the Court **GRANTS in part and DENIES in part** the Motion to Dismiss filed by Defendant Koch Industries Inc. (Doc. 141), **GRANTS in**

---

[5] Because the Court finds that the settlement bar precludes the claims against Apex, it is not necessary to address Apex's collateral estoppel argument.

**part and DENIES in part** the Motion to Dismiss filed by Defendant Koch Pipeline Company (Doc. 142), **GRANTS in part and DENIES in part** the Motion to Dismiss filed by Defendant Apex Oil Company, Inc. (Doc. 143) and **GRANTS in part and DENIES in part** the Motion to Dismiss filed by Defendants Arco Pipeline Company, Atlantic Richfield Company, BP Pipelines (North America) Inc., and BP Products North America Inc. (Doc. 144). Premcor's cost recovery claim under Section 107 (Count III) is **DISMISSED with prejudice**. Premcor's claims against Defendant Apex Oil Company, Inc. are also **DISMISSED with prejudice**. Premcor's claims against Koch Pipeline Company are **DISMISSED without prejudice** for failure to plead its claims against it with specificity.

    IT IS SO ORDERED.

    DATED:   September 20, 2019

                                                        **NANCY J. ROSENSTENGEL**
                                                        **Chief U.S. District Judge**