# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **THE PREMCOR REFINING GROUP INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**APEX OIL COMPANY, INC.,** *et al.,*<br><br>**Defendants.** | Case No. 3:17-CV-738-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Reconsider filed by Plaintiff The Premcor Refining Group, Inc. ("Premcor") (Doc. 196). For the reasons set forth below, the Court grants in part and denies in part the motion.

### FACTUAL & PROCEDURAL BACKGROUND

This action arises out of claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") brought by Premcor against Apex Oil Company, Inc. ("Apex") and seven other defendants. Premcor seeks recovery of costs associated with environmental contamination at a refinery in Hartford, Illinois ("Hartford Site") (Doc. 130, p. 1-2).

The Hartford Site has been the subject of a number of state and federal judicial and administrative proceedings which are relevant to the consideration of the instant motion. In 2005, the United States Environmental Protection Agency ("U.S. EPA") sued Apex under the Resource Conservation and Recovery Act to address contamination at the

Hartford Site and the spread of contaminated groundwater beneath the Village of Hartford. After a bench trial, on July 28, 2008, Judge Herndon of the Southern District of Illinois issued a 178-page "Order Following Bench Trial" with findings of fact describing a lengthy history of contamination at the Hartford Site and describing migration of the contamination into groundwater extending beneath the Village of Hartford (Case No. 3:05-cv-00242, Doc. 199). Judge Herndon concluded that Apex was jointly and severally liable "for the contamination at the Hartford Site" (Doc. 199 p. 178) and ordered Apex to comply with an injunctive order (Doc. 147-3) issued contemporaneously that required Apex (Judge Herndon's orders together, "Herndon Order") to take measures to monitor and remediate the "migration of groundwater contamination from beneath the Hartford Refinery to beneath the Village of Hartford" as well as "the hydrocarbon contamination at the Hartford Site[.]"

This was followed in 2010 by a Unilateral Administrative Order issued by the U.S. EPA ("U.S. EPA Order") in which the U.S. EPA mandated the structure of certain cleanup work at and around the Hartford Site required by the Herndon Order and other orders against different parties also liable for the contamination. *Hartford Area Hydrocarbon Site Unilateral Administrative Order*, RCRA-05-2010-0020, Filing #1 (2010).[1] In a letter sent to Apex and other parties with the order, the EPA noted that the parties liable for the

---

[1] While the EPA Administrative Docket has not been submitted by either party in their pleadings, it is referred to in the State Consent Order (*see infra* at 3–4) and serves as extrinsic evidence of the intent of the parties to the State Consent Order. Courts are permitted to take judicial notice of public records that are "generally known" and "not subject to reasonable dispute[.]" *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997), and the Court takes notice of the EPA Administrative Docket in order to inform its interpretation of the State Consent Order which refers to it.

contamination, "U.S. EPA, and the State of Illinois have engaged in settlement discussions relating to the Hartford Site . . . [i]f the parties were to enter into a settlement in the near future, the requirements of this Order could be integrated into a consent decree" (*Id.* at 1). The EPA further noted that:

> While liability under Section 7003 of RCRA is joint and several, U.S. EPA is considering that at this Site efficient implementation of the work may be best achieved through assignment of certain tasks to specific parties. However, such assignments shall in no way diminish or otherwise affect any party's liability for this Site as a whole. Nor would any such assignment constitute a U.S. EPA allocation of costs for the site. Finally, even if certain work is assigned to specific Respondents, implementation of this cleanup will require continuous cooperation amongst all Respondents (*Id.* at 2).

Apex did not reach a settlement with the U.S. EPA as contemplated in the U.S. EPA order, and its responsibilities to the U.S. EPA and to the other liable parties contemplated in the U.S. EPA Order were not integrated into any future consent order but rather were preserved.

These federal actions were followed by an action brought against Apex in Illinois State Court by the Illinois Environmental Protection Agency ("IEPA") in 2013 under the Illinois Environmental Protection Act for contamination at the Hartford Site. That state action culminated in a consent order between Apex and the IEPA ("State Consent Order") (Doc. 143-1). In the State Consent Order, IEPA released Apex from "any and all liability . . . arising under any Environmental Laws relating to each Release of Substances, threatened Release of Substances, and resulting conditions existing at, under, from, on or upon the Refinery" (*Id.* at 14). This blanket release, however, was qualified with the statement that "[t]his Consent Order does not resolve, settle or in any way alter any

liability imposed upon Apex by the [Herndon Order] or by the [U.S. EPA Order]" (*Id.* at 15–16).

The State Consent Order was approved by an order of the Circuit Court of Madison County, Illinois ("State Court Order") (Doc. 143-2). In its order, the Madison County Circuit Court addressed concerns raised by Premcor that the State Consent Order would give Apex a free pass on liability imposed in the Herndon Order and U.S. EPA Order, stating that "this agreement and order does not let Apex 'off the hook' financially for the federal orders" (*Id.* at 5). After reviewing pleadings presented by the parties to the State Consent Order and hearing arguments as to the intended scope and meaning of the State Consent Order, the Illinois Circuit Court concluded that it "does not affect any liabilities of any parties created by the [U.S. EPA Order]" and that it "does not impair or impinge upon matters addressed and resolved by the [Herndon Order]" (*Id.*). The court dismissed Premcor's motion for summary judgment for contribution costs, noting that as the State Consent Order did not affect the U.S. EPA Order or Herndon Order, any dispute over those orders "would be filed in Federal court where the orders were entered" (*Id.* at 6).

Premcor commenced this action in 2017, seeking contribution for costs incurred in remediating contamination at the Hartford Site under Section 113(f) of CERCLA, among other claims (Doc. 1). Section 113(f)(2) of CERCLA contains a "settlement bar" provision, which states that "A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement[.]" 42 U.S.C. § 9613.

This Court previously reviewed motions brought by several defendants seeking to dismiss this action or individual claims within it for a variety of reasons (Doc. 189). Among other holdings, the Court found in its order of September 20, 2019, that Premcor's claim against Apex under Section 113(f) of CERCLA was estopped by the settlement bar in Section 113(f)(2) of CERCLA due to the State Consent Order. Premcor now brings this motion to reconsider, arguing that the State Consent Order could not end liability under the CERCLA settlement bar because it explicitly carved out liability arising under the Herndon Order. In the alternate, Premcor asks that this question be certified for interlocutory appeal.

## LEGAL STANDARD

Motions for reconsideration are only appropriate where the court has misunderstood a party, made a decision outside of the issues presented by the parties, made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered. *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)).

## DISCUSSION

Premcor argues that the language of the State Consent Order explicitly excludes certain liabilities connected with the Herndon Order and therefore cannot function as an effective bar to litigation under CERCLA's settlement bar provision. In making this contention, it relies on Section VII(b) of the State Consent Order, which states that "the State reserves . . . all rights against Apex" for certain matters including "[l]iabilities for

the Federal Action Relief" (with Federal Action Relief defined as the relief ordered against Apex in the Herndon Order and U.S. EPA Order). Premcor further relies on Section IX of the State Consent Order, which states that "[t]his Consent Order does not resolve, settle or in any way resolve any liability imposed upon Apex by the Judgment in the Federal Action and Hartford UAO" (with Federal Action defined as the proceeding resulting in the Herndon Order, and Hartford UAO defined as the U.S. EPA Order).

Apex responds that this misconstrues the State Court rulings on the relationship between the Herndon Order and the State Consent Order, arguing that the State Consent Order's carve-out of liabilities related to the Herndon Order was merely intended to allow the federal government to enforce the Herndon Order, but not to leave Apex open to suits from third parties such as Premcor (Doc. 198 at 5–6).

This disagreement over the effect of the State Consent Order and its intended relationship with the Herndon Order raises an issue of the proper interpretation of a settlement such as the State Consent Order. In interpreting a settlement, a court should look to the principles of local law applicable to contracts generally. *Air Line Stewards and Stewardesses Assoc. v. Trans World Airlines, Inc.*, 713 F.2d 319, 321–22 (7th Cir. 1983). Under Illinois law, a court looks first to the plain language of the contract to determine if it is ambiguous. *Encyclopaedia Britannica, Inc. v. Guerrero*, 598 F. Supp. 2d 849, 852 (N.D. Ill. 2009) (citing *TAS Distributing Co., Inc. v. Cummins Engine Co.*, 491 F.3d 625, 636 (7th Cir. 2007). Where a contract is ambiguous, a court may look to extrinsic evidence to ascertain the intent of the parties. *Id.*

Here, the plain language of the State Consent Order indicates an intent to leave certain liabilities unresolved. The State Consent Order specifically states that it does not "resolve, settle, or in any way alter any liability imposed upon Apex" in the federal orders (Doc. 143-1 at 15). This language does not, as argued by Apex, appear to confine itself to preserving the federal government's right to enforce the federal orders while closing off claims by other parties—rather, the most logical reading of the broad language preserving "*any liability*" connected with the federal orders would be that this provision allows for future claims for contribution by third parties as well. Indeed, the language of the U.S. EPA Order explicitly contemplates responsibilities between the individual parties liable for remediation, making it impossible for the State Consent Order to leave only a federal right of enforcement while preserving "any liability" connected with the U.S. EPA Order.

Even if the Court were to find the language of the State Consent Order to be ambiguous, extrinsic evidence surrounding the formation of this agreement appears to support the interpretation that it does not function as an effective settlement bar. The Madison County Circuit Court approved the State Consent Order after reviewing arguments and pleadings by the parties about the intended meaning of the settlement, and that court seems to have been convinced that the agreement did not generally extinguish Apex's liabilities to other parties for the contamination arising under the refinery. Not only did the Madison County Circuit Court note that the State Consent Order "does not let Apex 'off the hook' financially for the federal orders[,]" and "does not affect liabilities of *any parties* created by the [U.S. EPA Order]" (Doc. 143-2 at 5

(emphasis added)) it seems to specifically contemplate Premcor bringing a claim for contribution, stating that it will not address Premcor's request for summary judgment on its contribution claim against Apex as it "presumes if there is a dispute over Apex and its abiding by the [Herndon Order] . . . that any necessary proceedings would be filed in Federal court" (*Id.*). Nowhere does the Madison County Circuit Court make any statements indicating that this preserved liability is limited to the federal government's ability to enforce the Herndon Order or is restricted to a particular portion of the refinery. Rather, based on its understanding of the intent of the State Consent Order as represented by the parties before it, the Madison County Circuit Court concluded that the "matters addressed" in the settlement excluded all liability to any parties arising from both the Herndon Order and the U.S. EPA Order.

In short, both the plain language of the State Consent Order and contemporaneous extrinsic evidence of the intent of the parties indicates that the State Consent Order intended to leave Apex liable for its remediation responsibilities under the Herndon Order and U.S. EPA Order, not solely to the federal government but also to other private parties. The Herndon Order and U.S. EPA Order are broadly worded and do not restrict their effect to the Western Property Boundary or any other geographic area of the site or its contamination; rather, the Herndon Order states that Apex shall generally continue to take action "as may be necessary to abate the hydrocarbon contamination *at the Hartford Site,*" and that Apex shall further investigate the migration of contamination from the Hartford Site to the Village of Hartford and abate conditions contributing to contamination under the village. Similarly, the U.S. EPA Order contemplates ongoing

remediation throughout the site, and though certain tasks are specifically allocated to Apex, the U.S. EPA letter to Apex notes that "such assignments shall in no way diminish or otherwise affect any party's liability for this Site as a whole." With the broad language imposing liability for the whole site in the federal orders, the language preserving this liability in the State Consent Order cannot truly be seen as a carve-out of a particular, restricted portion of liability for the contamination arising at the Hartford Site. Rather, the language of the State Consent Order preserving Apex's responsibility under the Federal Order simply prevents the State Consent Order from allowing for a settlement bar under Section 113(f)(2) of CERCLA, as the "matters addressed in the settlement" exclude such a broad swathe of responsibility for the contamination at the Hartford Site. The Court finds that it made an error of apprehension when it previously found that the State Consent Order included all liability arising from the Hartford Site in the "matters addressed in the settlement" and was therefore capable of serving as a settlement bar under CERCLA § 113(f)(2).

Accordingly, the Court grants Premcor's Motion to Reconsider and finds that Apex should be reinstated as a defendant. Because the Court has granted Premcor's Motion to Reconsider, it finds Premcor's alternative request for interlocutory appeal to be moot. The Court also finds Apex's request for entry of judgment pursuant to Federal Rule of Civil Procedure 54(b) to be moot.

## Conclusion

For the reasons set forth above, the Court **GRANTS in part and DENIES as MOOT in part** Premcor's Motion to Reconsider (Doc. 196) and **DENIES as MOOT**

Apex's Motion for Entry of Judgment Pursuant to Rule 54(b) (Doc. 199). The Clerk's Office is **DIRECTED** to **REINSTATE** Apex Oil Company, Inc. as a defendant in this action.

    **IT IS SO ORDERED.**

    DATED: January 15, 2020

                                                                           _____
                                                                            **NANCY J. ROSENSTENGEL**
                                                                            **Chief U.S. District Judge**