IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PREMCOR REFINING GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>APEX OIL COMPANY, INC., ATLANTIC RICHFIELD COMPANY, ARCO PIPELINE COMPANY, BP PRODUCTS NORTH AMERICA INC., BP PIPELINES (NORTH AMERICA) INC., KOCH PIPELINE COMPANY, KOCH INDUSTRIES INC., EQUILON ENTERPRISES LLC, and SHELL OIL COMPANY,<br><br>Defendants. | Case No. 3:17-CV-738-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court are a Motion for Protective Order filed by Defendant Equilon Enterprises LLC ("Equilon") (Doc. 275) and a Motion to Compel filed by Plaintiff Premcor Refining Group, Inc. ("Premcor") (Doc. 283). Each party filed timely responses (Docs. 284, 288) and timely replies (Docs. 291, 292) as to each motion respectively. Also pending before the Court are two proposed fourth amended scheduling orders, one submitted by Defendant Koch Industries, Inc. ("Koch") (Doc. 302) and the other by Plaintiff Premcor and Defendants Apex Oil Company, Inc., Atlantic Richfield Company, ARCO Pipeline Company, BP Products North America Inc., BP Pipelines (North America) Inc., Equilon Enterprises LLC, and Shell Oil Company (collectively the "Non-Koch Defendants") (Doc. 303). The Court will address each motion in turn.

## INTRODUCTION

This case involves environmental contamination and clean up in the Village of Hartford, Illinois, at a refinery owned by Premcor ("Premcor Refinery"). Premcor commenced this action in 2017, seeking contribution costs incurred in remediating contamination pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.*, ("CERCLA"). For now, discovery is proceeding under a phased approach. Phase One of discovery, currently underway, is limited to fact discovery related to whether each defendant qualifies as a "covered person" under CERCLA (*See* Doc. 259).

Covered persons, or potentially responsible parties, are defined as:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance[.]

42 U.S.C. § 9607(a). Pared down, covered persons include current and former owners, operators, arrangers, or transporters. *See NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 689 (7th Cir. 2014).

I.  **Equilon's Motion for Protective Order**

   a.  **Background**

Equilon filed a Motion for Protective Order (Doc. 275) asking the Court to sustain its objections to Premcor's discovery requests. According to Equilon, Premcor's requests fall outside the scope of Phase One discovery and are unduly burdensome, oppressive, and harassing. While Equilon never owned or operated the Premcor Refinery, it briefly operated a terminal purchased from Premcor as storage for crude oil and petroleum products. Equilon also engaged in refining operations at a neighboring facility, the Wood River Manufacturing Complex ("WRMC").

Equilon argues that its operations and activities at the WRMC along with its handling of any petroleum waste within the purchased terminal of the Premcor Refinery are entirely irrelevant to Premcor's contribution claim. Equilon also contends that Premcor's discovery requests, amounting to 53 requests to admit, 62 interrogatories, and 19 requests for production, go far afield of the limited scope of Phase One discovery as to covered person status. From Equilon's standpoint, Premcor only seeks information about waste practices at the WRMC, a property neighboring the actual remediation site, to demonstrate that rainfall, rising river levels, levee failure, or some other natural occurrence caused migration of hazardous substances from the WRMC to the Premcor Refinery. Equilon asserts that Premcor's "scorched-earth" discovery requests attempt to

reverse engineer the operational history of the WRMC to manufacture support for a novel legal theory of "passive migration." For practical context, Equilon notes that the WRMC had dozens of individual operating units running 24 hours a day for decades. Further, Equilon's ownership and operation of the WRMC ended two decades ago. In light of this history, Equilon objects to many requests as unduly burdensome.

Alternatively, Premcor defends its discovery requests as appropriate, relevant, and squarely within the scope of Phase One. Premcor highlights that Equilon did own and operate a portion of the Premcor Refinery known as the South Terminal and participated in demolition and clean-up work as well as waste disposal on neighboring property, which impacted the Premcor Refinery. Premcor also asserts that its discovery requests are not targeted at solely petroleum and crude oil wastes, but rather tank bottoms, sludges from distillate and slop oils, acids, caustics, and potentially chromium and lead. According to Premcor, Equilon's argument simply guesses at potential legal theories (i.e., passive migration). Instead, Premcor argues its inquiries are directed at waste disposal systems that have been designed to funnel wastes towards the Premcor Refinery property, not simply passive movement of waste.

To muddy the waters further, Premcor initially defined Equilon (which conducts business as Shell Oil Product US) to also include Shell Oil Company ("Shell"). After some confusion, Premcor added Shell as a defendant to the action, through the Second Amended Complaint, because Equilon and Shell are, in fact, separate entities. Shell, now named as a separate defendant, shares counsel with Equilon. The discovery responses provided by Equilon initially did not reflect answers from Shell but were subsequently

revised to include Shell. Entity confusion still lingers, however, in both the requests and responses.

### b. Legal Standard

Generally, the Federal Rules of Civil Procedure encourage liberal discovery, however, the Rules contain procedures for limiting discovery when necessary. Relevant here, Rule 26 permits a party who opposes a discovery request to move for a protective order. FED. R. CIV. P. 26(c)(1). Before moving for such protective order, a party must confer in good faith or attempt to resolve the dispute without court intervention. *Id.* Then, a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Id.* The moving party must justify the protective order by demonstrating specific facts to show good cause. *Global Material Technologies, Inc. v. Dazheng Metal Fibre Co., Ltd.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015). It is usually insufficient for the moving party to simply allege harm on behalf of one or more parties as justification for the protective order. *See Tuszkiewicz v. Allen-Bradley Co., Inc.*, 172 F.R.D. 393, 395 (E.D. Wis. 1997). A district court has discretion in deciding when a protective order is appropriate and what degree of protection is necessary. *See Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996).

### c. Analysis

Here, the parties did meet and confer in an effort to resolve the dispute. The remaining inquiry for issuance of a protective order is whether Equilon has met the prevailing standard of good cause. Equilon claims that Premcor's requests are inappropriate for exceeding the scope of Phase One and asserts that it would suffer harm

if required to produce the requested discovery. The Court finds that Premcor's discovery requests do not exceed Phase One, and further, that Equilon has failed to articulate specific reasoning to meet the good cause standard.

Most of Equilon's objections complain that the requested information exceeds the permitted scope of Phase One discovery (*See* Doc. 276-6 RTA ¶ 3-46, 49-53; Doc. 276-7 ROG ¶ 3-46, 49-60, RFP ¶ 2-8, 10-19). Again, parties are permitted to obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. FED. R. CIV. P. 26(b)(1). But the scope of discovery can be limited where "the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Within Phase One, per the Third Scheduling Order, the parties may explore fact discovery related to whether each defendant qualifies as a covered person under CERCLA. Breaking down the categories of covered persons can further illuminate what information would be relevant, and thus discoverable, for this determination. Again, covered persons include current and former owners, operators, arrangers, or transporters. *See* 42 U.S.C. § 9607(a).

In the first category, owner liability is fairly straightforward under CERCLA. Owners, however, may include those with interests less than full ownership but who act like owners assuming similar responsibilities, such as decision-making relevant to managing a property without needing to consult the real owner. *Northern States Power Co. v. City of Ashland, Wis.*, 93 F. Supp. 3d 958, 974-75 (W.D. Wis. 2015). Next, under CERCLA, an operator directs the innerworkings, manages, or conducts the affairs of a facility. *United States v. Bestfoods*, 524 U.S. 51, 66 (1998). More concretely, an operator "must

manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *Id.* at 66-67.

Moving to the next category, to show a party is an arranger, a plaintiff must demonstrate that the party: "(1) owned or possessed (2) hazardous substances and (3) by contract, agreement, or otherwise, arranged for disposal or treatment, or arranged for transport for disposal or treatment, of those substances at the CERCLA-defined facility." *LCCS Group v. A.N. Webber Logistics, Inc.*, 341 F. Supp. 3d 847, 855 (N.D. Ill. 2018); *see* 42 U.S.C. § 9607(a)(3). Simplified by the Supreme Court, "an entity may qualify as an arranger […] when it takes intentional steps to dispose of a hazardous substance." *Burlington Northern and Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 611 (2009). Likewise, to show a party is a transporter, a plaintiff must demonstrate that the party: (1) accepted (2) hazardous substances (3) for transport to a facility (4) where a release or threatened release of that hazardous substance occurred. *See* 42 U.S.C. § 9607(a)(4).

Certainly, Equilon's and/or Shell's ownership of a portion of the Premcor Refinery is relevant to several of these categories. Premcor's discovery requests inquire into ownership, when it occurred, and what substances were stored and generated in that portion of the Premcor Refinery at the time (*See* Doc. 276-1, RTA ¶ 48-53; Doc. 276-2, ROG ¶ 48-53, RFP ¶ 17-19). The issue of whether the ownership occurred at the time of disposal of any hazardous substance is central to whether Equilon or Shell are covered persons. Even if Equilon simply used the area for storage of crude oil and petroleum products, other hazardous substances could have been generated as a byproduct, stored, or

released from that terminal at the relevant time. Equilon or Shell could possibly qualify as an owner or operator based on their use of the terminal as well. Information regarding ownership of a portion of the Premcor Refinery is discoverable during Phase One. Objections to such discovery requests are overruled.

In its other objections, Equilon argues that Premcor's migration-based discovery requests are inappropriate, overly broad, and outside the permitted discovery of Phase One, all the while based on a flimsy legal theory unsupported by caselaw. Equilon, in essence, asserts that its activity on adjacent property is irrelevant to covered person status.

First, the Court notes that, while other circuits have held that certain types of passive migration do not constitute "disposal" under CERCLA, the Seventh Circuit has never directly addressed the issue.[1] Even within the circuits that have faced this question, each holding heavily depends on the factual circumstances of the case, with some circuits carving out liability for passive migration in certain contexts.[2]

---

[1] *ABB Indus. Systems, Inc. v. Prime Technology, Inc.*, 120 F.3d 351, 357-59 (2d Cir. 1997) (interpreting the word "disposal" as limited to spilling, discharging, leaking, etc. and not to passive migration or the gradual spread of contamination underground); *United States v. CDMG Realty Co.*, 96 F.3d 706, 712-15 (3d Cir. 1996) (limiting the definition of Disposal under CERCLA to exclude passive spreading of contamination in a landfill); *United States v. 150 Acres of Land*, 204 F.3d 698, 704-06 (6th Cir. 2000) (passive migration does not constitute a Disposal within the meaning of CERCLA); *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 874-88 (9th Cir. 2001) (alleged passive migration of contaminants through soil during defendant's ownership was not a "disposal" under CERCLA).

[2] *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 844-46 (4th Cir. 1992) (holding former owners liable for disposal of hazardous wastes that leaked from an underground storage tank); *See Carson Harbor Village, Ltd.*, 270 F.3d at 881-85 (holding that while disposal does not include passive *soil* migration, it may include other forms of passive migration) (emphasis added).

Second, Premcor's requests do not target, or necessarily include, inquiry into strictly passive migration (*See* Doc. 276-1, RTA ¶ 1-13, 18-20, 22, 24-28, 31, 34, 37-38, 40, 42-45, 47-53; Doc. 276-2, ROG ¶ 1-13, 17-22, 24-28, 31, 35-38, 40-45, 47-58, 60-62, RFP ¶ 1-14, 17-19). Premcor's requests appear more focused on affirmative acts such as generating wastes and designing waste disposal systems to funnel wastes onto portions of the Premcor Refinery or other shared spaces. Some requests reference migration, storm runoff, water levels, or groundwater investigations, but they cannot be solely construed to support a theory of passive migration (*See* Doc. 276-1, RTA ¶ 14-17, 21, 23, 29-30, 32-33, 35-36, 39, 41, 46; Doc. 276-2, ROG ¶ 14-16, 23, 29-30, 32-34, 39, 46, 59, RFP ¶ 15, 16). These inquiries are relevant to Phase One discovery because the questions of where hazardous materials originated and how these substances landed within the boundaries of the Premcor Refinery must be resolved to determine whether Equilon is a covered person. For example, whether Equilon intentionally acted in disposing or diverting hazardous substances onto or towards portions of the Premcor Refinery could help determine if Equilon qualifies as an arranger, a category of covered persons. Site adjacent activity can be relevant in CERCLA cases, especially if hazardous waste is diverted or directed to a neighboring property requiring remediation. *See NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776 (7th Cir. 2000) (adjacent property owner liable for some hazardous wastes on plaintiff's property).

Furthermore, Equilon's arguments regarding passive migration are simply premature at this stage of litigation. Equilon cannot object or avoid responding to discovery simply because it may prompt Premcor to pursue a specific legal theory.

Premcor's inquiries are relevant to the question of whether Equilon, and Shell for that matter, are covered persons pursuant to CERCLA.

Pivoting to potential harm and burden, Equilon highlights that its ownership of the WRMC occurred decades ago and spanned a long period time with on-site operations running 24 hours a day. Having to locate, review, and disseminate documents related to waste management during this time, according to Equilon, would cause undue burden and substantial harm, especially wasting time and resources. Unfortunately, this is a common plight in cases arising under CERCLA, which are routinely complex involving many decades of documents and lengthy discovery. This contention alone, that it would take considerable time and resources to gather and analyze relevant documents over the period of several decades, does not meet the good cause standard to issue a protective order. Premcor has the right to discover evidence related to waste disposal directed towards the Premcor Refinery site. Moreover, Equilon's response and production at this stage may lead to the conclusion that Equilon does not qualify as a covered person under CERCLA, ultimately saving time and expense in further discovery and litigation.

In any event, Equilon's arguments regarding the burden of such production are well taken. While the Court cannot find that Premcor's discovery requests are unduly burdensome considering the claims and defenses the parties are litigating, the burden of this discovery is not lightly imposed. The Court will raise some guardrails to appropriately limit discovery, which will be further addressed in the section below discussing Premcor's Motion to Compel.

For these reasons, the Court **DENIES** Equilon's Motion for Protective Order (Doc. 275).

II. **Premcor's Motion to Compel**

a. **Background**

The issues contained in Equilon's Motion for Protective Order significantly overlap with Premcor's Motion to Compel (Doc. 283).

Premcor asserts that Equilon's (and Shell's) discovery responses violate Rules 33, 34, and 36 of the Federal Rules of Civil Procedure. Primarily, Premcor criticizes the responses for failing to identify and produce documents containing the requested information, for being non-responsive, and for lacking proper details to justify each response. On the other hand, Equilon argues, parallel to its Motion for Protective Order, that Premcor has served "wild, far-reaching discovery" targeting the operational and waste management history of unrelated, off-site operations. Equilon also reasserts that its answers and objections are appropriate considering Premcor's requests exceed the scope of Phase One discovery, and further expresses that activities wholly within an adjacent property are irrelevant to whether Equilon qualifies as a covered person.

b. **Legal Standard**

This Court has broad discretion in discovery matters, including ruling on motions to compel. *See James v. Hyatt Regency Chi.*, 707 F.3d 775, 784 (7th Cir. 2013). Generally, the parties are permitted to obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. FED. R. CIV. P. 26(b)(1). Relevancy should be construed broadly to encompass "any matter that bears on, or that

reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Considering relevancy, information need not be admissible at trial if discovery seems reasonably calculated to lead to discovery of admissible evidence. FED. R. CIV. P. 26(b)(1). During discovery, however, "[p]arties are entitled to a reasonable opportunity to investigate the facts—and no more." *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994).

Rule 33 permits parties to serve upon each other interrogatories relating to any matter that may be inquired into under Rule 26(b). FED. R. CIV. P. 33(a)(2). "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." *Id.* Moreover, grounds for objecting to any interrogatory should be stated with specificity. FED. R. CIV. P. 33(b)(4).

Parties may also serve requests on other parties to produce documents or permit inspection, copying, testing, or sampling of certain items. FED. R. CIV. P. 34(a). An objection to such requests must state with specificity the grounds and reasons for objecting and whether any responsive materials are being withheld on the basis of that objection. FED. R. CIV. P. 34(b)(2)(B)-(C).

Rule 36 empowers a party to serve on another party written requests for admissions of the truth of any matters within the scope of Rule 26(b)(1) relating to the pending action. FED. R. CIV. P. 36(a). An answering party may only assert lack of

knowledge or information as a reason for failing to admit or deny a request if the party "states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." FED. R. CIV. P. 36(a)(4). If a court finds an objection unjustified, "it must order that an answer be served." FED. R. CIV. P. 36(a)(6). Then, on finding that an answer does not comply with Rule 36, a court may either find that the matter is admitted or that an amended answer must be served. *Id*.

Parties seeking discovery may move for an order compelling an answer or production if a party fails to answer an interrogatory or produce documents. FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4). "[A] district court is not limited to either compelling or not compelling a discovery request; in making its ruling, a district court should independently determine the proper course of discovery based upon the arguments of the parties. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996).

### c. Analysis

In addressing Equilon's Motion for Protective Order above, the Court concluded that Premcor's discovery requests fall within the bounds of Phase One discovery. Most of Equilon's objections sit atop the premise that Premcor's requests exceeded the limits of Phase One. Those objections have been overruled, and thus Equilon must amend its discovery responses accordingly. To clear the muddy waters obscuring the distinction between Equilon and Shell, separate responses should be provided as to each entity. In the revised responses, Equilon and Shell shall comply with the applicable Federal Rules

of Civil Procedure in providing the specific basis for each response, objection, admission, or denial rooted in the information within its possession or control—this includes identifying documents and producing relevant information.

Based on the arguments of the parties, and particularly Equilon's concern of the burden in responding to the requested discovery, the Court imposes some limitations on Premcor's discovery requests based on the information already gathered, types of hazardous substances discovered, and relative time and place of contamination. Premcor shall provide more specificity in its descriptions of the relevant geographical areas, while limiting its requests only to areas it reasonably believes have been contaminated with off-site waste and to areas it reasonably believes such contaminants originated. To the extent possible, Premcor shall limit its requests to the specific years that it reasonably believes hazardous materials came onto its Refinery from the adjacent property. Additionally, Premcor shall narrow its requests to include only the hazardous materials found within the boundaries of the Premcor Refinery, not simply all wastes or substances. Further, as Equilon has argued, Phase One discovery is limited to the covered person determination, so discovery into disposal of hazardous substances shall be limited to the degree necessary to determine whether Equilon or Shell are covered persons and need not encompass an inquiry into the *extent* of each covered person's *liability*. In light of these limitations, Premcor shall serve amended discovery requests on Equilon and Shell, only making changes necessary to comply with this Order appropriately limiting, not expanding, its requests.

The Court **GRANTS** Premcor's Motion to Compel (Doc. 283) in the respect that Equilon's and Shell's objections are overruled, and each entity must provide amended responses. Premcor shall properly limit its discovery requests pursuant to this Order and serve them upon Equilon and Shell within **14 days**. Equilon and Shell shall provide amended responses within **21 days** of receipt of the revised requests.

### III.     Proposed Fourth Amended Scheduling Orders

Finally, the Court addresses the two Proposed Fourth Amended Scheduling Orders submitted by the parties. In the Third Amended Scheduling Order dated February 24, 2021 (Doc. 259), the Court ordered the parties to confer and to submit another joint scheduling order, or to submit separate proposals if they could not reach agreement. Not surprisingly, the parties have proposed two separate orders. The parties agree that, at a minimum, Phase One discovery should continue into expert discovery and the dispositive motion stage.

Premcor and the Non-Koch Defendants propose that the parties complete Phase One discovery, as set out in the Third Amended Scheduling Order, and progress from fact discovery to expert discovery and dispositive motions on the sole issue of whether a party is a "covered person" pursuant to CERCLA. Their proposed scheduling order also moves discovery beyond Phase One by concurrently allowing parties to engage in another limited phase of fact discovery, Phase Two. The relevant inquiries during Phase Two would be: (i) facts concerning the amount that any party has incurred, or committed to incur, that could constitute CERCLA response costs which are the subject of this action; and (ii) amounts that any party has received, or is entitled to receive, from any other

person, such as insurers, indemnitors, or parties to other lawsuits, to reimburse or defray CERCLA response costs that are the subject of this litigation. Premcor and the Non-Koch Defendants argue that this discovery approach will provide insight as to whether Premcor can recover any of the costs it has incurred, or will incur, under CERCLA. The proponents of this approach believe that continuing through Phase One into Phase Two will promote judicial economy and resolution through settlement, as well as avoid substantial burden.

Koch disagrees. The phased approach, Koch claims, will ultimately extend discovery timelines, frustrate judicial economy, and waste resources. Rather, Koch argues, the litigation will not be significantly advanced over the course of the next year and will continuing looming. Koch proposes that the Court lift the stay of discovery into all non-Phase One issues.

While the Court understands Koch's frustration in the slow progression of discovery thus far and its hesitance to accept another phased approach, the Court finds that phasing is still the best solution considering the complexities and needs of this case. After Phase One dispositive motions are resolved, and while Phase Two progresses, the parties shall submit a joint fifth proposed scheduling order—or separate scheduling orders if no agreement can be made. At that time, the Court can again evaluate whether further phasing is necessary or if discovery should be opened to all issues, especially considering the potential disposal of parties or claims from the conclusion of Phase One discovery.

Accordingly, the Court **GRANTS** Premcor and the Non-Koch Defendants' motion (Doc. 303) to enter their proposed Fourth Amended Scheduling Order, which shall be entered by separate order. Within **14 days**, the parties shall submit a revised joint report with modified dates based on the timing of this Order.

### CONCLUSION

Equilon's Motion for Protective Order (Doc. 275) is **DENIED**, and its objections are overruled. Premcor's Motion to Compel (Doc. 283) is **GRANTED** to the extent that Equilon and Shell shall provide amended responses. Accordingly, Premcor shall serve amended discovery requests upon Equilon and Shell within **14 days**. Equilon and Shell shall provide amended responses within **21 days** of receipt of the revised requests.

Moreover, the Court **ADOPTS** the Proposed Fourth Amended Scheduling Order submitted by Premcor and the Non-Koch Defendants (Doc. 303). Within **14 days**, the parties shall submit a revised joint report with modified dates based on the timing of this Order.

**IT IS SO ORDERED.**

DATED: August 29, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**