# EXHIBIT 1
# "Plan of Merger"

## PLAN OF MERGER

PLAN OF MERGER, dated November 26, 1968, by and between ATLANTIC RICHFIELD COMPANY, a Pennsylvania corporation (hereinafter sometimes called "Atlantic Richfield" and sometimes called the "Surviving Corporation"), and SINCLAIR OIL CORPORATION, a New York corporation (hereinafter sometimes called "Sinclair"), said two corporations being hereinafter sometimes collectively called the "Constituent Corporations";

WHEREAS, Atlantic Richfield is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, having been incorporated on April 29, 1870 under the name The Atlantic Refining Company, and has authorized capital stock consisting of 352,000 shares of Preferred Stock of the par value of $100 per share, of which 352,000 shares designated as Cumulative Preferred Stock, 3.75% Series B, were issued and outstanding on November 15, 1968, 4,230,849 shares of Preference Stock of the par value of $1 per share (hereinafter sometimes called "$3.00 Preference Stock"), of which 4,130,766 shares designated as $3.00 Cumulative Convertible Preference Stock were issued and outstanding on November 15, 1968, and 50,000,000 shares of Common Stock of the par value of $5 per share, of which 32,956,556 shares were issued and outstanding on November 15, 1968 (exclusive of 23,598 treasury shares); and

WHEREAS, each outstanding share of such Cumulative Preferred Stock, 3.75% Series B, is not entitled to vote except as provided by law or in the Articles of Incorporation of Atlantic Richfield; each outstanding share of $3.00 Preference Stock is entitled to two votes per share; each outstanding share of such Common Stock is entitled to one vote per share; each such share entitled to vote is entitled to vote cumulatively for directors; and each such class or series is entitled to vote as a separate class or series with respect to certain matters; and

WHEREAS, prior to the Effective Date (as hereinafter defined) of the merger, such number of outstanding shares of $3.00 Preference Stock may be increased as the result of issuance of shares upon the exercise of stock options and the conversion of Atlantic Richfield's 4⅜% Convertible Subordinated Debentures, due April 15, 1983, and may be decreased as the result of conversion of such shares into shares of Atlantic Richfield Common Stock, and such number of outstanding shares of Atlantic Richfield Common Stock may be increased as the result of issuance or re-issuance of shares upon the exercise of stock options, the payment of awards under Atlantic Richfield's Incentive Compensation Plan and the conversion of shares of $3.00 Preference Stock and as the result of the re-issuance of treasury shares for general corporate purposes and may be decreased as a result of the purchase of shares of Atlantic Richfield Common Stock for use in the payment of awards under its Incentive Compensation Plan; and

WHEREAS, it is intended that the Articles of Incorporation of Atlantic Richfield as heretofore amended be amended and restated to increase the authorized shares of Common Stock from 50,000,000 to 75,000,000 shares and to establish a new class of 15,250,000 shares of $2.80 Cumulative Convertible Preference Stock of the par value of $1 per share (hereinafter sometimes called "$2.80 Preference Stock"); and

WHEREAS, Sinclair is a corporation duly organized and existing under the laws of the State of New York, having been incorporated on September 23, 1919 under the name Sinclair Consolidated Oil Corporation, and has authorized capital stock consisting of 25,000,000 shares of Common Stock of the par value of $5 per share, of which 12,561,192 were issued and outstanding on November 15, 1968 (exclusive of 222,647 treasury shares and 1,675 shares held for exchange of outstanding scrip for fractional shares), each outstanding share of Common Stock being entitled to one vote, and 183,750 shares were reserved for issuance upon exercise of outstanding stock options granted under Sinclair's Stock

Option Plans and 2,050,573 shares were reserved for issuance upon conversion of its outstanding 4⅜% Convertible Subordinated Debentures Due 1986; and

WHEREAS, such number of outstanding shares of Sinclair Common Stock may be increased prior to the Effective Date of the merger as the result of issuance or re-issuance of shares upon the exercise of stock options, the conversion of Sinclair's outstanding 4⅜% Convertible Subordinated Debentures Due 1986, the exchange of shares for outstanding scrip for fractional shares and the payment of awards under Sinclair's Incentive Compensation Plan; and

WHEREAS, the principal office of Atlantic Richfield in the Commonwealth of Pennsylvania is located at 260 South Broad Street, in the City of Philadelphia, County of Philadelphia; and

WHEREAS, the principal office of Sinclair in the State of New York is located at 600 Fifth Avenue, in the City of New York, County of New York; and

WHEREAS, each of the Constituent Corporations has adopted this Plan of Merger and the Plan of Reorganization embodied herein under and pursuant to the laws of the Commonwealth of Pennsylvania and of the State of New York and on the terms and conditions herein contained; and

WHEREAS, Atlantic Richfield and Sinclair entered into an initial agreement on October 31, 1968 concerning the merger of Sinclair into Atlantic Richfield; and

WHEREAS, this Plan of Merger supersedes in all respects such initial agreement;

Now, THEREFORE, the Constituent Corporations hereby agree that Sinclair shall be merged into Atlantic Richfield, that Atlantic Richfield shall continue under the laws of Pennsylvania as the Surviving Corporation, that the terms and conditions of the merger and the mode of carrying the same into effect and the manner and basis of converting the shares of each Constituent Corporation into shares of the Surviving Corporation under this Plan of Merger (hereinafter sometimes called the "Plan"), are and shall be as hereinafter set forth, and that on the Effective Date of the merger the Articles of Incorporation of Atlantic Richfield, as heretofore amended, be changed as hereinafter set forth.

## ARTICLE I.

1.1 Sinclair shall be merged into Atlantic Richfield in accordance with the applicable laws of the Commonwealth of Pennsylvania and the State of New York. Atlantic Richfield shall be the Surviving Corporation and shall be governed by the laws of the Commonwealth of Pennsylvania.

1.2 The name of the Surviving Corporation shall be Atlantic Richfield Company. The capital stock of the Surviving Corporation shall be as appears in the Articles of Incorporation of Atlantic Richfield, as amended and restated hereby and as set forth in Exhibit I attached to this Plan.

1.3 The Articles of Incorporation of Atlantic Richfield as heretofore amended, shall, on the Effective Date of the merger, be changed by further amending said Articles and by restating said Articles in their entirety so that the same shall read in full as set forth in Exhibit I attached hereto. The terms and provisions of said Exhibit I are hereby incorporated in and made a part of this Plan. Said Articles of Incorporation, as so amended and restated, may be further amended in accordance with their terms and as provided by law.

1.4 The following are the names and addresses of the persons who, on the Effective Date of the merger, shall constitute the Board of Directors of the Surviving Corporation and who shall hold office until the next annual meeting of shareholders of the Surviving Corporation and until their successors are elected and qualified:

BP_CER000046

| Name | Address |
|---|---|
| Robert O. Anderson | 612 No. Kentucky Ave., Roswell, New Mexico |
| T. F. Bradshaw | 680 Madison Ave., New York, N. Y. |
| Louis F. Davis | 7027 Desco Drive, Dallas, Texas |
| J. P. Downer | Cove Edge Road, Syosset, Long Island, N. Y. |
| Rollin Eckis | 239 Deodar Lane, Bradbury, California |
| J. A. Grazier | 435 East 52nd St., New York, N. Y. |
| Courtlandt S. Gross | 1230 Arrowmink Rd., Villanova, Pennsylvania |
| Chas. S. Jones | 882 Flintridge Ave., Pasadena, California |
| D. M. Kendall | Porchuck Rd., Greenwich, Connecticut |
| Ellmore C. Patterson | Hook Rd., Bedford Village, New York |
| Louis M. Ream | 448 West Rd., New Canaan, Connecticut |
| O. P. Thomas | 600 Fifth Avenue, New York, N. Y. |
| Kendrick R. Wilson, Jr. | Shagbark Road, Wilson Pt., So. Norwalk, Connecticut |

If on the Effective Date of the merger any vacancy shall exist on the Board of Directors of the Surviving Corporation, such vacancy may be filled in the manner provided in the By-Laws of the Surviving Corporation.

## ARTICLE II.

2.1  The manner and basis of converting the issued and outstanding shares of the capital stock of each of the Constituent Corporations into the shares of the Surviving Corporation shall be as hereinafter in this ARTICLE II set forth.

2.2  On the Effective Date of the merger all shares of Preferred Stock, $3.00 Preference Stock and Common Stock of Atlantic Richfield then issued (including shares held in the treasury of Atlantic Richfield) shall continue to be issued shares. Each certificate of Atlantic Richfield evidencing ownership of any such shares shall continue to evidence ownership of the same number of shares of Preferred, $3.00 Preference or Common Stock of the Surviving Corporation.

2.3  Each share of Common Stock of Sinclair issued and outstanding on the Effective Date of the merger (excluding any shares held in the treasury of Sinclair, which shares shall cease to exist) shall thereupon be converted into and become one share of $2.80 Preference Stock of the Surviving Corporation and six-tenths (0.6) of one share of Common Stock of the Surviving Corporation.

2.4  Each option outstanding on the Effective Date of the merger for the purchase of shares of Common Stock of Sinclair pursuant to Sinclair's Stock Option Plans shall, upon such Effective Date, be converted into and become an option to purchase the same number of shares of $2.80 Preference Stock of the Surviving Corporation and six-tenths (0.6) of the same number of shares of Common Stock of the Surviving Corporation. On and after the Effective Date of the merger the option price for each share of $2.80 Preference Stock of the Surviving Corporation and six-tenths (0.6) of a share of Common Stock of the Surviving Corporation shall be the same as the applicable option price for each share of Sinclair Common Stock prior to the Effective Date. Upon exercise of any such option there will be delivered to the optionee the number of shares of $2.80 Preference Stock of the Surviving Corporation and the number of whole shares of Common Stock of the Surviving Corporation issuable on the Effective Date of the merger with respect to the number of shares of Common Stock of Sinclair as to which the option is exercised, plus one additional share of Common Stock of the Surviving Corporation if any fractional interests arising in connection with such exercise, taken together with any fractional interests arising out of, and not delivered with any prior exercise or exercises, shall equal or exceed one whole share of such Common Stock. The terms and conditions of each option shall otherwise be unchanged.

BP_CER000047

2.5  Atlantic Richfield and Sinclair shall take such action as may be necessary to provide that the holder of each 4⅜% Convertible Subordinated Debenture Due 1986 of Sinclair outstanding on the Effective Date of the merger shall, upon such Effective Date, become entitled to convert such debenture into the same number of shares of $2.80 Preference Stock of the Surviving Corporation and six-tenths (0.6) of the same number of shares of Common Stock of the Surviving Corporation (except that the Surviving Corporation shall not be required to issue any fractional shares of its Common Stock) as the number of shares of Sinclair Common Stock into which such debenture was convertible immediately prior to such Effective Date, as nearly as practicable in accordance with the provisions of Article Four of the Indenture dated December 1, 1956 under which said debentures were issued, subject to subsequent adjustment which shall be as nearly equivalent as may be practicable to the adjustments provided for in said Article Four.

2.6  Each scrip certificate exchangeable for a fraction of one share of Sinclair Common Stock issued and outstanding on the Effective Date of the merger shall thereupon be converted into and become a scrip certificate exchangeable, subject to the same terms, provisions and conditions (except that the Surviving Corporation shall not be required to issue any fractional shares of its Common Stock), for the same fraction of one share of $2.80 Preference Stock of the Surviving Corporation and of six-tenths (0.6) of one share of Common Stock of the Surviving Corporation.

2.7  As promptly as practicable after the Effective Date of the merger, each holder of any outstanding certificate or certificates theretofore representing shares of Common Stock of Sinclair may surrender the same to a transfer agent or agents designated by the Surviving Corporation, and such holder shall be entitled upon such surrender to receive in exchange therefor certificates representing the number of shares of $2.80 Preference Stock of the Surviving Corporation and the number of whole shares of Common Stock of the Surviving Corporation into which the shares of Common Stock of Sinclair theretofore represented by the certificate or certificates so surrendered shall have been converted as aforesaid. Until so surrendered, each outstanding certificate which, prior to the Effective Date of the merger, represented Common Stock of Sinclair, shall be deemed for all corporate purposes, except the payment of dividends, to evidence ownership of the number of shares of $2.80 Preference Stock of the Surviving Corporation and the number of whole shares of Common Stock of the Surviving Corporation into which the shares of Common Stock of Sinclair (which, prior to such Effective Date, were represented thereby) have been so converted. Unless and until such outstanding certificates formerly representing Common Stock of Sinclair are so surrendered no dividend payable to holders of record of the $2.80 Preference and Common Stock of the Surviving Corporation as of any date subsequent to the Effective Date of the merger shall be paid to the holders of such outstanding certificates in respect thereof. Upon surrender of such outstanding certificates, however, there shall be paid to the holders of the certificates of $2.80 Preference and Common Stock of the Surviving Corporation issued in exchange therefor the amount of dividends which theretofore became payable with respect to such shares of $2.80 Preference Stock of the Surviving Corporation and to such full shares of Common Stock of the Surviving Corporation. No interest shall be payable with respect to the payment of such dividends on surrender of outstanding certificates. The holder of a fractional share interest, as such, shall not be entitled to any dividends or to any distribution in the event of a liquidation or to any voting or other privileges of a shareholder of the Surviving Corporation.

2.8  No fractional shares of Common Stock of the Surviving Corporation and no scrip certificates therefor will be issued to former holders of Common Stock of Sinclair in connection with the merger. The transfer agent or agents designated by the Surviving Corporation pursuant to paragraph 2.7 above will hold for the account of the former holders of Common Stock of Sinclair, who would otherwise be entitled to receive fractional interests in shares of Common Stock of the Surviving Corporation, a certificate or certificates for the aggregate number of shares of Common Stock of the Surviving Corporation called for by all such fractional interests and will mail to each such holder a non-transferable order form by which he may instruct such agent or agents at any time during a period of approximately 30 days fixed by the Surviving Corporation commencing after the Effective Date of the merger, as his agent, (a) to purchase a sufficient fractional interest to entitle him to a whole share of the Common Stock of the Surviving Corpo-

BP_CER000048

ration or (b) to sell any fractional interest. Any order to purchase or dispose of any such fractional interest must be accompanied by the certificate or certificates theretofore representing Common Stock of Sinclair. Any holder who shall not within such period furnish such instructions to purchase an additional fractional share interest or to sell such fractional share interest or who shall not so surrender his certificate or certificates, shall be deemed to have elected to have such agent or agents sell his fractional share interest at the expiration of such period, and such holder shall have the right, until six years after the Effective Date of the merger, upon surrender of such certificates to receive his prorata share of the net proceeds of the sale by such agent or agents representing the aggregate of all such fractional share interests with respect to which no instructions shall have been given as hereinabove provided. Purchase and sale orders may be offset, but will be executed at prices determined by market transactions. Upon the expiration of this six year period, any remaining proceeds shall become the property of the Surviving Corporation.

2.9 Upon the Effective Date of the merger it shall be deemed that the stock transfer books of Sinclair are closed and no transfer of shares of Sinclair shall thereafter be made or consummated. Sinclair, in anticipation of the Effective Date, shall do all such acts or things as to cause its shares to be delisted from the New York Stock Exchange, the Midwest Stock Exchange and the Pacific Coast Stock Exchange.

## ARTICLE III.

3.1 On the Effective Date of the merger provided for in this Plan, the separate existence of Sinclair shall cease, except to the extent, if any, continued by statute. All the property, real, personal and mixed, and franchises of each of the Constituent Corporations and all debts due on whatever account to either of them, including subscriptions to shares, other causes of action, and every other asset belonging to either of them, shall be taken and deemed to be transferred to and vested in the Surviving Corporation without further act or deed. The Surviving Corporation shall be responsible for all the liabilities and obligations of the Constituent Corporations; but the liabilities of the Constituent Corporations or their shareholders, directors, or officers shall not be affected by this merger, nor shall the rights of the creditors thereof or of any persons dealing with such corporations, or any liens upon the property of such corporations, be impaired by this merger, and any claim existing or action or proceeding pending by or against either of such corporations may be prosecuted to judgment as if this merger had not taken place, or the Surviving Corporation may be proceeded against or substituted in place of Sinclair.

3.2 Prior to the Effective Date of the merger the Constituent Corporations shall take all such action as shall be necessary or appropriate to effectuate the merger. If, at any time after the Effective Date of the merger, the Surviving Corporation shall determine that any further conveyance, assignment or other documents or any further action is necessary or desirable to vest in or confirm to the Surviving Corporation full title to all the properties, assets, rights, privileges and franchises of the Constituent Corporations, the officers and Directors of the Constituent Corporations, at the expense of the Surviving Corporation, shall execute and deliver all such instruments and take all such action as the Surviving Corporation may determine to be necessary or desirable in order to vest in and confirm to the Surviving Corporation title to and possession of all such properties, assets, rights, privileges and franchises, and otherwise to carry out the purposes of this Plan.

3.3 The "Effective Date" of the merger shall be, and such term as used herein shall mean, the time when the merger becomes effective as provided by the applicable laws of the Commonwealth of Pennsylvania.

3.4 Subject to the effectiveness of the merger contemplated hereby, Atlantic Richfield as the Surviving Corporation

(a) agrees that it may be served with process in New York State in any action or special proceeding for the enforcement of any liability or obligation of Sinclair or Atlantic Richfield, and for the

BP_CER000049

enforcement, as provided in the New York Business Corporation Law, of the right of shareholders of Sinclair to receive payment for their shares against Atlantic Richfield;

(b) agrees that, subject to the provisions of Section 623 of the New York Business Corporation Law, Atlantic Richfield will promptly pay to the shareholders of Sinclair the amount, if any, to which they shall be entitled under the provisions of the New York Business Corporation Law relating to the right of shareholders to receive payment for their shares; and

(c) designates the Secretary of State of New York as its agent upon whom process against it may be served in the manner set forth in paragraph (b) of Section 306 of the New York Business Corporation Law, in any action or special proceeding described in subparagraph (E) of paragraph (e)(2) of Section 907 of said Law, and agrees that the Secretary of State of New York shall mail a copy of the process in such action or special proceeding to Atlantic Richfield Company, Office of the Secretary, 717 Fifth Avenue, New York, New York 10022.

## ARTICLE IV.

4.1 Atlantic Richfield warrants and represents as follows:

(a) Atlantic Richfield is duly organized and existing under the laws of the Commonwealth of Pennsylvania and has authorized and outstanding as of the date of this Plan (1) the number of shares of Cumulative Preferred Stock, 3.75% Series B, as set forth in the recitals hereof, (2) the number of shares of $3.00 Preference Stock, as set forth in the recitals hereof, plus the number of shares, if any, issued since November 15, 1968 pursuant to the exercise of stock options outstanding on said date and upon conversion of 4⅜% Convertible Subordinated Debentures, due April 15, 1983, and less the number of shares, if any, converted since such date into shares of Common Stock, and (3) the number of shares of Common Stock, as set forth in the recitals hereof, plus the number of shares, if any, issued since November 15, 1968 pursuant to the exercise of stock options and upon conversion of shares of $3.00 Preference Stock.

(b) Atlantic Richfield is in good standing as a domestic corporation under the laws of the Commonwealth of Pennsylvania and has the corporate power to carry on its business as now conducted and to enter into the merger contemplated hereby.

(c) Atlantic Richfield has qualified to do business in each of the states in which it is now doing business, and it is in good standing in each of said states.

(d) Atlantic Richfield has furnished Sinclair with a correct list of all its wholly owned and majority owned subsidiary corporations, showing as to each of such latter corporations the percentage of the total outstanding stock thereof which is owned by Atlantic Richfield. Each such subsidiary is qualified to do business and is in good standing in each of the states in which it is now doing business.

(e) Atlantic Richfield has furnished Sinclair with a consolidated balance sheet of Atlantic Richfield and its consolidated subsidiaries as of December 31, 1967 and September 30, 1968 and the related consolidated statements of income and net income retained for use in the business for the periods then ended, the balance sheet as of December 31, 1967 and the statements for the one year period ended December 31, 1967 having been certified by Lybrand, Ross Bros. & Montgomery. Said financial statements present fairly the consolidated financial position of Atlantic Richfield and its consolidated subsidiaries at December 31, 1967 and September 30, 1968 and the results of their operations for the periods then ended, in conformity with generally accepted accounting principles applied on a consistent basis, except as may be otherwise indicated in said financial statements and notes thereto. All liabilities for the current and all prior years, including income and other taxes for which Atlantic Richfield believes it has any liability, have been paid in full or adequately provided for in said financial statements.

(f) Since September 30, 1968, there has not been (1) any material adverse change in the financial condition or in the operations of the business of Atlantic Richfield and its consolidated sub-

BP_CER000050

sidiaries from that shown on the September 30, 1968 financial statements referred to in paragraph 4.1(e) above; (2) any damage, destruction or loss, whether covered by insurance or not, materially and adversely affecting the properties and business of Atlantic Richfield and its consolidated subsidiaries; (3) any declaration, setting aside or payment of any dividend in respect of the capital stock of Atlantic Richfield, except regular quarterly cash dividends on its Preferred Stock of ninety-three and three-quarter cents ($0.9375) per share, on its $3.00 Preference Stock of seventy-five cents ($0.75) per share and on its Common Stock of forty-five cents ($0.45) per share; (4) any issuance of capital stock by Atlantic Richfield, any distribution (whether by way of reclassification, recapitalization, stock split or otherwise) in respect of the capital stock of Atlantic Richfield, or any redemption or other acquisition of any such stock, except for the issuance of shares of $3.00 Preference Stock and Common Stock pursuant to the exercise of stock options, the issuance of shares of $3.00 Preference Stock upon the conversion of 4⅜% Convertible Subordinated Debentures, due April 15, 1983, the issuance of shares of Common Stock upon conversion of shares of $3.00 Preference Stock, and the re-issue of shares of Common Stock; (5) any increase in the compensation payable or to become payable by Atlantic Richfield and its subsidiaries to its or their officers or key employees except those occurring in the ordinary course of business, or any material increase in any bonus, insurance, pension or other employee benefit plan, payment or arrangement made to, for or with any such officers or key employees; (6) any labor troubles, other than routine matters, none of which is material; or (7) any other event or condition of any character pertaining to and materially and adversely affecting the assets or business of Atlantic Richfield and its subsidiaries.

(g) Atlantic Richfield and its consolidated subsidiaries have and, on the Effective Date of the merger, will have, good and marketable title to all the properties, interests in properties and assets, real and personal, reflected in the December 31, 1967 and September 30, 1968 financial statements referred to in paragraph 4.1(e) above or acquired after September 30, 1968 (except properties, interests in properties and assets sold or otherwise disposed of since December 31, 1967 in the ordinary course of business, except tank vessels and certain other assets sold by subsidiaries and except matters referred to in the notes to such financial statements) free and clear of all mortgages, liens, pledges, charges or encumbrances of any nature whatsoever, except (1) the lien of current taxes not yet due and payable, (2) minor exceptions, not in the aggregate material, and (3) such imperfections of title, easements, encumbrances and mortgages or other liens, as do not materially detract from or interfere with the value or present use of the properties subject thereto or affected thereby, or otherwise materially impair present business operations. All leases pursuant to which Atlantic Richfield or a consolidated subsidiary of Atlantic Richfield leases from others any real or personal property of substantial value are in good standing, valid and effective, and to the best of Atlantic Richfield's knowledge, information and belief and after reasonable investigation by Atlantic Richfield, there is not, under any of such leases, any existing material default or event of default or event which with notice or lapse of time or both would constitute a material default and in respect of which Atlantic Richfield has not taken adequate steps to prevent a default from occurring. The plants, structures and equipment of Atlantic Richfield and its consolidated subsidiaries that are necessary to the operations of their businesses are in good operating condition and repair, subject only to ordinary wear and tear.

(h) Except as shown in the notes to said financial statements and except for stock options granted by Atlantic Richfield under its Qualified Stock Option Plan subsequent to the date of such financial statements, there are no options outstanding granted or assumed by Atlantic Richfield or any of its subsidiaries for the acquisition of $3.00 Preference or Common Stock nor any rights under any debentures or other instruments for conversion into $3.00 Preference or Common Stock.

(i) Atlantic Richfield has made available to Sinclair for its inspection and examination its properties and those of its subsidiaries, including data as to its crude oil and natural gas reserves, and all material outstanding contracts, agreements, leases or other commitments. Neither Atlantic Richfield nor any of its consolidated subsidiaries is in default in any material respect under the terms of any such contract, agreement, lease or commitment.

BP_CER000051

(j) Atlantic Richfield has not since November 15, 1968 declared or paid stock dividends or subdivided any shares of its $3.00 Preference or Common Stock, whether by way of reclassification, recapitalization or otherwise.

(k) Atlantic Richfield does not know of or have any reasonable grounds to know of the assertion against it or any of its consolidated subsidiaries of any material liability existing at December 31, 1967 or September 30, 1968, which should have been reflected or reserved against in a balance sheet as of those dates prepared in accordance with generally accepted accounting principles and which was not reflected or reserved against in said consolidated balance sheet as of December 31, 1967 and September 30, 1968 or the notes thereto.

(l) The information provided and to be provided by Atlantic Richfield to Sinclair for use in the proxy statement to be used by Sinclair in connection with the merger does not and will not contain any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, and does not and will not omit to state any material fact necessary in order to make the statements therein not false or misleading.

(m) There are no suits, actions or legal or administrative proceedings pending, or to the knowledge of Atlantic Richfield threatened, against it or any of its subsidiaries, of which Sinclair has not been advised in writing, which in the aggregate will materially and adversely affect the financial condition of Atlantic Richfield and its subsidiaries or the conduct of their businesses.

(n) At the Effective Date of the merger the consummation of the transactions contemplated by this Plan will not result in the breach of any term or provision of or constitute a default under any material indenture, mortgage, deed of trust, other material agreement or instrument or similar or related agreements or instruments which, when considered in the aggregate, would be material to which Atlantic Richfield or any of its subsidiaries is a party except (i) breaches or defaults which shall have been duly waived or consented to and (ii) breaches or defaults as to which Atlantic Richfield shall have notified Sinclair in writing that waivers or consents have not been obtained.

(o) In Atlantic Richfield's opinion Atlantic Richfield and its subsidiaries are not knowingly making, using or selling any machine, manufacture, composition of matter or process which infringes the claims of any patent, and are not otherwise knowingly infringing or contributorily infringing the claims of any patent, and to the best of Atlantic Richfield's knowledge, information and belief Atlantic Richfield and its subsidiaries are not infringing any trade name, trade mark or copyright.

(p) Since December 31, 1967, Atlantic Richfield and its subsidiaries have operated their businesses only in the usual, regular and ordinary course.

(q) Atlantic Richfield has not retained any broker, agent or finder or paid or agreed to pay any brokerage fee or commission or any finder's fee to any broker, agent or finder on account of this Plan or any matters contemplated hereby.

4.2  Sinclair warrants and represents as follows:

(a) Sinclair is duly organized and existing under the laws of the State of New York and has authorized and outstanding as of the date of this Plan the number of shares of Common Stock set forth in the recitals hereof, plus the number of shares, if any, issued since November 15, 1968 pursuant to the exercise of stock options outstanding on said date, the conversion of 4⅜% Convertible Subordinated Debentures Due 1986 outstanding on said date, the exchange of scrip certificates outstanding on said date and the payment of awards under Sinclair's Incentive Compensation Plan.

(b) Sinclair has no outstanding options or rights to subscribe to, or contracts or commitments to issue and sell (upon conversion or otherwise) any shares of its Common Stock except the shares reserved for issuance upon exercise of stock options and upon conversion of 4⅜% Convertible Subordinated Debentures Due 1986 and the shares held for exchange of scrip certificates, as stated in the recitals hereof.

(c) Sinclair is in good standing as a domestic corporation under the laws of the State of New York and has the corporate power to carry on its business as now conducted and to enter into the merger contemplated hereby.

8

BP_CER000052

(d) Sinclair has qualified to do business in each of the states in which it is now doing business, and it is in good standing in each of said states.

(e) Sinclair has furnished Atlantic Richfield with a correct (subject to the unnamed subsidiaries hereinafter referred to) list of all its wholly owned and majority owned subsidiary corporations (including Sinclair-Koppers Company, a partnershp in which Sinclair has a 50% interest), showing as to each of the latter corporations the percentage of the total outstanding stock thereof owned by Sinclair. Each such subsidiary is qualified to do business and is in good standing in each of the states in which it is now doing business. Certain subsidiaries are not named on said list; such unnamed subsidiaries considered in the aggregate as a single subsidiary would not constitute a significant subsidiary of Sinclair.

(f) Sinclair has furnished Atlantic Richfield with a consolidated balance sheet of Sinclair and its subsidiaries as of December 31, 1967 and September 30, 1968 and the related consolidated statements of income and retained earnings for the periods then ended, the balance sheet as of December 31, 1967 and the statements for the one year period ended December 31, 1967 having been certified by Arthur Young & Company. Said financial statements present fairly the consolidated financial position of Sinclair and its subsidiaries at December 31, 1967 and September 30, 1968 and the results of their operations for the periods then ended, in conformity with generally accepted accounting principles applied on a consistent basis, except as may be otherwise indicated in said financial statements and notes thereto. All liabilities for the current and all prior years, including income and other taxes for which Sinclair believes it has any liability, have been paid in full or adequately provided for in said financial statements.

(g) Since September 30, 1968, there has not been (1) any material adverse change in the financial condition or in the operations of the business of Sinclair and its consolidated subsidiaries from that shown on the September 30, 1968 financial statements referred to in paragraph 4.2(f) above; (2) any damage, destruction, or loss, whether covered by insurance or not, materially and adversely affecting the properties and business of Sinclair and its subsidiaries; (3) any declaration, setting aside or payment of any dividend in respect of the Common Stock of Sinclair, except regular quarterly cash dividends on its Common Stock of seventy cents ($0.70) per share; (4) any issuance of capital stock by Sinclair, any distribution (whether by way of reclassification, recapitalization, stock split or otherwise) in respect of the capital stock of Sinclair, or any redemption or other acquisition of any such stock, except for the issuance of Common Stock pursuant to the exercise of stock options and upon the conversion of 4⅝% Convertible Subordinated Debentures Due 1986, for which shares were reserved as stated in the recitals hereof, and except for the delivery of Common Stock in exchange for scrip certificates for which shares were held as stated in the recitals hereof and in payment of awards under Sinclair's Incentive Compensation Plan; (5) any increase in the compensation payable or to become payable by Sinclair and its subsidiaries to its or their officers or key employees except those occurring in the ordinary course of business, or any material increase in any bonus, insurance, pension or other employee benefit plan, payment or arrangement made to, for or with any such officers or key employees; (6) any labor troubles, other than routine matters, none of which is material; or (7) any other event or condition of any character pertaining to and materially and adversely affecting the assets or business of Sinclair and its subsidiaries.

(h) Sinclair and its consolidated subsidiaries have and, on the Effective Date of the merger, will have, good and marketable title to all of the properties, interests in properties and assets, real and personal, reflected in the December 31, 1967 and September 30, 1968 financial statements referred to in paragraph 4.2(f) above or acquired after September 30, 1968 (except properties, interests in properties and assets sold or otherwise disposed of since December 31, 1967 in the ordinary course of business and matters referred to in the notes to such financial statements) free and clear of all mortgages, liens, pledges, charges or encumbrances of any nature whatsoever, except (1) the lien of current taxes not yet due and payable, (2) minor exceptions, not in the aggregate material, and (3) such imperfections of title, easements, encumbrances and mortgages or other liens, as do not materially detract from or interfere with the value or present use of the properties subject thereto or affected thereby, or otherwise materially

9

impair present business operations. All leases pursuant to which Sinclair or a consolidated subsidiary leases from others any real or personal property of substantial value are in good standing, valid and effective, and, to the best of Sinclair's knowledge, information and belief and after reasonable investigation by Sinclair, there is not, under any of such leases, any existing material default or event of default or event which with notice or lapse of time or both would constitute a material default and in respect of which Sinclair has not taken adequate steps to prevent a default from occurring. The plants, structures and equipment of Sinclair and its consolidated subsidiaries that are necessary to the operations of their businesses are in good operating condition and repair, subject only to ordinary wear and tear.

(i) Sinclair does not know of or have any reasonable grounds to know of the assertion against it or any of its consolidated subsidiaries of any material liability existing at December 31, 1967 or September 30, 1968 which should have been reflected or reserved against in a balance sheet as of those dates prepared in accordance with generally accepted accounting principles and which was not reflected or reserved against in said consolidated balance sheet as of December 31, 1967 and September 30, 1968 or the notes thereto.

(j) Sinclair has made available to Atlantic Richfield for its inspection and examination its properties and those of its subsidiaries, including data as to its crude oil and natural gas reserves, and all material outstanding contracts, concession grants from foreign governments, leases or other commitments. Neither Sinclair nor any of its consolidated subsidiaries is in default in any material respect under the terms of any such contract, grant, lease or commitment.

(k) The information provided and to be provided by Sinclair to Atlantic Richfield for use in the proxy statement to be used by Atlantic Richfield in connection with the merger does not and will not contain any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, and does not and will not omit to state any material fact necessary in order to make the statements therein not false or misleading.

(l) There are no suits, actions or legal or administrative proceedings pending, or to the knowledge of Sinclair threatened, against it or any of its subsidiaries, of which Atlantic Richfield has not been advised in writing, which in the aggregate will materially and adversely affect the financial condition of Sinclair and its subsidiaries or the conduct of their businesses.

(m) At the Effective Date of the merger the consummation of the transactions contemplated by this Plan will not result in the breach of any term or provision of or constitute a default under any material indenture, mortgage, deed of trust, other material agreement or instrument or similar or related agreements or instruments which, when considered in the aggregate, would be material to which Sinclair or any of its subsidiaries is a party except (i) breaches or defaults which shall have been duly waived or consented to and (ii) breaches or defaults as to which Sinclair shall have notified Atlantic Richfield in writing that waivers or consents have not been obtained.

(n) Sinclair has not retained any broker, agent or finder or paid or agreed to pay any brokerage fee or commission or any finder's fee to any broker, agent or finder on account of this Plan or any matters contemplated hereby.

(o) All properties, interests in properties, assets and rights of substantial value of Sinclair are fully transferable to Atlantic Richfield pursuant to this Plan without the necessity of consents by any others and without creating any preferential or other rights of any others, except as disclosed by Sinclair to Atlantic Richfield in writing prior to the Effective Date of the merger, provided that Sinclair shall not be required to disclose the necessity of consents or the creation or loss of rights which would singly or in the aggregate not materially and adversely affect the financial condition of Sinclair and its subsidiaries or the conduct of their businesses.

(p) In Sinclair's opinion Sinclair and its subsidiaries are not knowingly making, using or selling any machine, manufacture, composition of matter or process which infringes the claims of any patent, and are not otherwise knowingly infringing or contributorily infringing the claims of any patent, and to the best of Sinclair's knowledge, information and belief Sinclair and its subsidiaries are not infringing any trade name, trade mark or copyright.

BP_CER000054

(q) Since December 31, 1967 Sinclair and its subsidiaries have operated their businesses only in the usual, regular and ordinary course.

4.3 Each Constituent Corporation grants to the other, and its officers, employees, attorneys and agents, the right, during normal business hours, to inspect its records and to consult with its officers, employees, attorneys and agents for the purpose of determining the accuracy of the representations and warranties hereinabove made. In order to facilitate such inspection and consultation and to conclude other arrangements incident or related to the transaction each Constituent Corporation will compile and furnish such information as the other may reasonably request.

## ARTICLE V.

5.1 Sinclair agrees that from the date hereof to the Effective Date of the merger it and each of its subsidiaries will:

(a) Operate its business only in the usual, regular and ordinary manner so as to maintain the goodwill it now enjoys and, to the extent consistent with such operation, it will use all reasonable efforts to preserve intact its present business organization, keep available the services of its present principal officers and employees, and preserve its relationships with its suppliers, jobbers, distributors and others having business dealings with it.

(b) At its expense, maintain all its property in customary repair, order and condition, reasonable wear and use and damage by fire or unavoidable casualty excepted (subject, however, to the provisions of paragraph 5.1(h)).

(c) Not enter into any contracts of employment except in accordance with a plan or procedure approved by the Constituent Corporations.

(d) Not make any borrowings with a maturity of over twelve (12) months except as may be mutually agreed to by the Constituent Corporations.

(e) Not enter into commitments involving major capital expenditures, loans or advances, and not incur any major contingent liability except as may be mutually agreed to by the Constituent Corporations.

(f) Maintain its books of account and records in the usual, regular and ordinary manner, in accordance with generally accepted accounting principles applied on a consistent basis.

(g) Duly comply with all laws applicable to it and to the conduct of its business.

(h) Maintain insurance upon all its properties and with respect to the conduct of its business in such amounts and of such kinds as are in effect as of the date of this Plan, or as the same may be added to from time to time in Sinclair's discretion; provided, that in the event that during the period from the date hereof to and including the Effective Date of the merger any of the property or assets of Sinclair are damaged or destroyed by fire or other casualty, the obligations of the Constituent Corporations under this Plan shall not be affected thereby, but Sinclair shall promptly notify Atlantic Richfield in writing thereof and proceed with the repair or restoration thereof in such manner and to such extent as may be approved by the Constituent Corporations, and, upon the Effective Date of the merger, all proceeds of insurance and claims of every kind arising as a result of any such change or destruction shall become the property of the Surviving Corporation.

(i) Not sell or dispose of any property or assets or engage in any activity or transaction, or encumber any property or assets, except in the usual and ordinary course of business and except in any transactions between Sinclair and any of its wholly owned subsidiaries.

5.2 Sinclair agrees that from the date hereof to the Effective Date of the merger:

(a) It will not amend its Certificate of Incorporation or merge or consolidate with or into any other corporation or change in any manner the rights of its Common Stock or other securities or the character of its business.

11

BP_CER000055

(b) It will not issue, re-issue or sell, or issue options or rights to subscribe to, or enter into any contract or commitment to issue, re-issue or sell (upon conversion or otherwise), any shares of its capital stock, or subdivide or in any way reclassify any shares of its capital stock, or acquire, or agree to acquire, any shares of its capital stock, other than the granting of options pursuant to its Qualified Stock Option Plan 1968, as it may be amended, but within the 250,000 share limit currently provided by that Plan, the issuance of shares of its Common Stock upon the exercise of stock options, the conversion of Sinclair's outstanding 4⅜% Convertible Subordinated Debentures Due 1986, the exchange of shares for outstanding scrip for fractional shares and the payment of awards under Sinclair's Incentive Compensation Plan.

(c) It will not declare or pay any dividends on shares of its outstanding Common Stock or make any other distribution of assets to the holders thereof, except that it may at the discretion of its Board of Directors continue to declare and pay cash dividends on its Common Stock at the quarterly rate of seventy cents ($0.70) per share, the establishment of record and payment dates for such dividends to be only in accordance with its recent dividend history.

(d) It will promptly advise Atlantic Richfield in writing of any material adverse change in the financial condition, business or affairs of Sinclair.

(e) It will promptly advise Atlantic Richfield in writing of each written objection to the merger received by Sinclair from its shareholders and of each written demand for payment for their shares, and will furnish to Atlantic Richfield such relevant information as Atlantic Richfield shall request with respect to such objections and demands.

5.3 Atlantic Richfield agrees that from the date hereof to the Effective Date of the merger it and each of its subsidiaries will:

(a) Operate its business only in the usual, regular and ordinary manner so as to maintain the goodwill it now enjoys and, to the extent consistent with such operation, it will use all reasonable efforts to preserve intact its present business organization, keep available the services of its present principal officers and employees, and preserve its relationships with its suppliers, jobbers, distributors and others having business dealings with it.

(b) At its expense, maintain all its property in customary repair, order and condition, reasonable wear and use and damage by fire or unavoidable casualty excepted (subject, however, to the provisions of paragraph 5.3(f)).

(c) Not enter into any contracts of employment except in accordance with a plan or procedure approved by the Constituent Corporations.

(d) Maintain its books of account and records in the usual, regular and ordinary manner in accordance with generally accepted accounting principles applied on a consistent basis.

(e) Duly comply with all laws applicable to it and to the conduct of its business.

(f) Maintain insurance upon all its properties and with respect to the conduct of its business in such amounts and of such kinds as are in effect as of the date of this Plan, or as the same may be added to from time to time in Atlantic Richfield's discretion; provided, that in the event that during the period from the date hereof to and including the Effective Date of the merger any of the property or assets of Atlantic Richfield are damaged or destroyed by fire or other casualty, the obligations of the Constituent Corporations under this Plan shall not be affected thereby, but Atlantic Richfield shall promptly notify Sinclair in writing thereof and proceed with the repair or restoration thereof in such manner and to such extent as may be approved by the Constituent Corporations, and, upon the Effective Date of the merger, all proceeds of insurance and claims of every kind arising as a result of any such change or destruction shall become the property of the Surviving Corporation.

(g) Not sell or dispose of any property or assets or engage in any activity or transaction, or encumber any property or assets, except in the usual and ordinary course of business and except in any transactions between Atlantic Richfield and any of its wholly owned subsidiaries.

BP_CER000056

5.4 Atlantic Richfield agrees that from the date hereof to the Effective Date of the merger:

(a) It will not amend its Articles of Incorporation as heretofore amended except as contemplated hereby or merge or consolidate with or into any other corporation or change in any manner the rights of its Preferred, $3.00 Preference or Common Stock, or other securities or the character of its business.

(b) It will not issue, re-issue or sell, or issue options or rights to subscribe to, or enter into any contract or commitment to issue, re-issue or sell (upon conversion or otherwise), any shares of its $3.00 Preference or Common Stock, or subdivide or in any way reclassify any shares of its $3.00 Preference or Common Stock, other than the granting of options under Atlantic Richfield's Qualified Stock Option Plan consistent with past practice, the payment of awards under Atlantic Richfield's Incentive Compensation Plan, the re-issuance of treasury shares for general corporate purposes, the issuance of shares of its Common Stock upon the exercise of stock options, and the conversion of Atlantic Richfield's outstanding $3.00 Preference Stock and the issuance of shares of its $3.00 Preference Stock upon the exercise of stock options and the conversion of its $4\frac{3}{8}\%$ Convertible Subordinated Debentures, due April 15, 1983. Atlantic Richfield may acquire shares of its Common Stock for use in the payment of awards under its Incentive Compensation Plan.

(c) It will not declare or pay any dividends on shares of its outstanding capital stock or make any other distribution of assets to the holders thereof, except that it may at the discretion of its Board of Directors continue to declare and pay cash dividends on its Preferred and $3.00 Preference Stocks at the quarterly rates of ninety-three and three-quarter cents ($0.9375) per share and of seventy-five cents ($0.75) per share, respectively, and on its Common Stock at such rates as may be determined by its Board of Directors. The record dates for the holders of shares entitled to dividends on Atlantic Richfield Common Stock shall be the same as those Sinclair proposes to fix for holders of shares entitled to dividends on its Common Stock.

(d) It will promptly advise Sinclair in writing of any material adverse change in the financial condition, business or affairs of Atlantic Richfield.

5.5 Atlantic Richfield agrees that it will take such steps as may be required to accomplish as of the Effective Date of the merger the listing upon the New York Stock Exchange of the shares of its $2.80 Preference and Common Stock which will be issued pursuant to this Plan and upon exercise of options, conversion of debentures and exchange of scrip as provided in paragraphs 2.4, 2.5 and 2.6 and the listing on said exchange of the Common Stock of Atlantic Richfield into which such $2.80 Preference Stock will be convertible.

## ARTICLE VI.

6.1 The obligation of Atlantic Richfield to consummate and effect the merger hereunder shall be subject to the following conditions:

(a) The representations and warranties of Sinclair herein contained shall be true as of and at the Effective Date of the merger with the same effect as though made at such date except as contemplated or permitted by this Plan; Sinclair shall have performed all obligations and complied with all covenants required by this Plan to be performed or complied with by it prior to the Effective Date of the merger; there shall not have been any development which, in the opinion of Atlantic Richfield, threatens to disturb the management of the Surviving Corporation; and Sinclair shall have delivered to Atlantic Richfield a certificate dated the date of the consummation of such merger and signed by its President or one of its Executive Vice Presidents and by its Secretary or its Treasurer to the foregoing effect.

(b) Atlantic Richfield shall have received a certified copy of the resolution adopting this Plan adopted by at least a majority vote of the Directors of Sinclair.

(c) There shall have been received from the Securities and Exchange Commission in a form satisfactory to counsel for Atlantic Richfield assurance that the Surviving Corporation will be permitted to utilize full "pooling of interests" accounting treatment in connection with and subsequent to the merger. The term "pooling of interests" shall have the meaning stated in Accounting Research Bulletin No. 48, dated January 1957, issued by the Committee on Accounting Procedure of the American Institute of Accountants.

BP_CER000057

(d) Subject to the provisions of ARTICLE VIII hereof, the holders of at least two-thirds of the outstanding shares of Common Stock of Sinclair shall have voted in favor of the adoption of this Plan and the merger contemplated hereby, and the holders of a majority of the outstanding shares of $3.00 Preference Stock of Atlantic Richfield voting as a class and the holders of a majority of the outstanding shares of Common Stock of Atlantic Richfield voting as a class shall have voted in favor of the approval of this Plan and the merger contemplated hereby.

(e) All transactions contemplated hereby, and the form and substance of all legal proceedings and of all papers used or delivered hereunder, shall be acceptable to counsel for Atlantic Richfield to the extent requested by Atlantic Richfield.

(f) The holders of any indebtedness of Sinclair and the lessors of any property of substantial value leased by Sinclair and the other parties to any material agreements to which Sinclair or any of its subsidiaries is a party, shall, when and to the extent necessary, in the opinion of Atlantic Richfield or its counsel, have consented to the merger contemplated hereby or have waived any breach or default resulting from the consummation of the merger or any preferential or other rights they would otherwise have by reason of the merger. In determining the materiality of any agreement, Atlantic Richfield may take into consideration the cumulative effect of similar and related agreements.

(g) Atlantic Richfield shall have received an opinion of its counsel that the issuance of Atlantic Richfield's $2.80 Preference and Common Stock pursuant to this Plan (except shares issuable upon exercise of options granted under Sinclair's Stock Option Plans) and the issuance of Atlantic Richfield's Common Stock upon conversion of such $2.80 Preference Stock will not require registration under the Securities Act of 1933.

(h) Atlantic Richfield shall have received a favorable opinion, dated as of the Effective Date of the merger, from G. Bruce Mallum, Esq., Vice President and General Counsel of Sinclair, in form and substance satisfactory to Atlantic Richfield and its counsel, to the effect that the corporate existence, good standing, and authorized and issued stock of Sinclair and its subsidiaries are as stated or referred to in this Plan; that Sinclair has taken all corporate actions which are conditions precedent to Sinclair's obligations under this Plan; that, except as may be specified by said counsel, he does not know of any material litigation, proceeding or governmental investigation or labor dispute or labor trouble pending or threatened against or relating to Sinclair or its subsidiaries or their respective properties or businesses; that all corporate and other proceedings required to be taken by or on the part of Sinclair to authorize and to carry out this Plan and to effect the merger contemplated hereby have been duly and properly taken; that this Plan is the valid obligation of Sinclair, legally binding upon it in accordance with its terms; and that Sinclair has and Atlantic Richfield will receive valid marketable title to the shares of the capital stock of Sinclair's subsidiaries to be transferred and delivered to Atlantic Richfield as herein provided, free and clear of all mortgages, liens, pledges, charges and encumbrances. Atlantic Richfield shall have received also such opinion of counsel as to titles to Sinclair's and its subsidiaries' properties, property interests and assets on the Effective Date of the merger and the effective transfer of Sinclair's properties, property interests and assets to Atlantic Richfield as Atlantic Richfield's counsel shall reasonably require. The opinions referred to in this paragraph shall also cover such other matters incident to the transaction herein contemplated as Atlantic Richfield and its counsel may reasonably request, including the form of all papers, the validity of all proceedings, and, if requested, shall include a statement with respect to counsel's knowledge of the practices followed by Sinclair and its subsidiaries in acquiring title to real property. In rendering such opinion with respect to title to property and with respect to foreign subsidiaries, Mr. Mallum may rely upon title certificates, opinions of other counsel or other evidence which he deems satisfactory.

In addition, Atlantic Richfield shall have received a favorable opinion, dated as of the Effective Date of the merger, from Dewey, Ballantine, Bushby, Palmer & Wood, counsel for Sinclair, in form and substance satisfactory to Atlantic Richfield and its counsel, to the effect that Sinclair is duly organized and validly existing as a corporation in good standing under the laws of the State of New York and that all corporate proceedings of Sinclair necessary to effectuate the merger contemplated hereby have been duly taken in accordance with law.

BP_CER000058

(i) Any and all permits, approvals and other actions of any authority required in the opinion of counsel for Atlantic Richfield for the lawful consummation of the merger as contemplated by this Plan shall have been obtained, and no such permit, approval or other action shall contain any provision which in the judgment of Atlantic Richfield shall be unduly burdensome.

(j) There shall have been received from the Internal Revenue Service a tax ruling satisfactory to counsel for Atlantic Richfield to the effect that (1) the merger of Sinclair into Atlantic Richfield will constitute a reorganization within the meaning of Section 368(a)(1)(A) of the Internal Revenue Code of 1954 and therefore that no gain or loss will be recognized to Atlantic Richfield or Sinclair upon such merger; (2) no gain or loss will be recognized to any shareholder of either Atlantic Richfield or Sinclair as a consequence of the merger except with respect to those amounts received by Sinclair shareholders on the sale of fractional interests or amounts paid to Atlantic Richfield or Sinclair shareholders pursuant to the assertion of dissenters' rights; (3) Atlantic Richfield's basis and holding period for all the assets of Sinclair will be determined solely with respect to the basis and holding period of such assets in the hands of Sinclair; and (4) the provisions of Section 306(a) of the Code will not be applicable to any disposition or redemption of the shares of $2.80 Preference Stock of Atlantic Richfield in view of the provisions of Section 306(b)(4) of the Code.

(k) The New York Stock Exchange shall have approved for listing on official notice of issuance the $2.80 Preference and Common Stock to be issued by Atlantic Richfield in exchange for Sinclair shares and scrip certificates pursuant to this Plan and upon conversion of debentures and exercise of options as provided in paragraphs 2.4 and 2.5 and the Common Stock of Atlantic Richfield into which said $2.80 Preference Stock is convertible.

(l) Atlantic Richfield shall have received a valid agreement, in form and substance satisfactory to counsel for Atlantic Richfield, relating to disposition of Atlantic Richfield capital stock, executed and delivered by each holder of securities of Sinclair who, in the opinion of counsel for Atlantic Richfield, is an "affiliate" of Sinclair as defined in Rule 133 under the Securities Act of 1933 at the time the proposed merger is submitted to a vote of the shareholders of Sinclair.

6.2 The obligation of Sinclair to consummate and effect the merger hereunder shall be subject to the following conditions:

(a) The representations and warranties of Atlantic Richfield herein contained shall be true as of and at the Effective Date of the merger with the same effect as though made at such date except as contemplated or permitted by this Plan; Atlantic Richfield shall have performed all obligations and complied with all covenants required by this Plan to be performed or complied with by it prior to the Effective Date of the merger; and Atlantic Richfield shall have delivered to Sinclair a certificate dated the date of the consummation of such merger and signed by its Chairman of the Board, President or one of its Executive Vice Presidents and by its Secretary or its Treasurer to the foregoing effect.

(b) Sinclair shall have received a certified copy of the resolution approving this Plan adopted by at least a majority vote of the Directors of Atlantic Richfield.

(c) Subject to the provisions of ARTICLE VIII hereof, the holders of at least two-thirds of the outstanding shares of Common Stock of Sinclair shall have voted in favor of the adoption of this Plan and the merger contemplated hereby, and the holders of a majority of the outstanding shares of $3.00 Preference Stock of Atlantic Richfield voting as a class and the holders of a majority of the outstanding shares of Common Stock of Atlantic Richfield voting as a class shall have voted in favor of the approval of this Plan and the merger contemplated hereby.

(d) All transactions contemplated hereby, and the form and substance of all legal proceedings and of all papers used or delivered hereunder, shall be acceptable to counsel for Sinclair to the extent requested by Sinclair.

(e) Sinclair shall have received a favorable opinion, dated as of the Effective Date of the merger, from Ballard, Spahr, Andrews & Ingersoll, counsel for Atlantic Richfield, in form and substance

15

satisfactory to Sinclair and its counsel, to the effect that the corporate existence, good standing, and authorized and issued stock of Atlantic Richfield and its consolidated subsidiaries are as stated or referred to in this Plan; that Atlantic Richfield has taken all corporate actions which are conditions precedent to Atlantic Richfield's obligations under this Plan; that the $2.80 Preference and Common Stock which is to be issued pursuant to the terms of this Plan (including the shares issuable on exercise of options, conversion of debentures or exchange of scrip) has been duly authorized and, when issued and delivered pursuant to the terms of this Plan or upon exercise of options, conversion of debentures or exchange of scrip as contemplated in this Plan, will have been legally and validly issued and will be fully paid and non-assessable and no shareholder of Atlantic Richfield will have any preemptive right of subscription or purchase in respect thereof; that the shares of Common Stock of Atlantic Richfield issuable on conversion of such $2.80 Preference Stock will have been duly authorized and, when issued upon conversion of $2.80 Preference Stock in accordance with the terms thereof, will be validly issued, fully paid and non-assessable and no shareholder of Atlantic Richfield will have any preemptive right of subscription or purchase in respect thereof; that the shares of $2.80 Preference and Common Stock issuable upon exercise of options to purchase Common Stock of Sinclair outstanding at the Effective Date or upon conversion of Sinclair convertible debentures or upon exchange of scrip and the shares of Common Stock of Atlantic Richfield issuable on conversion of $2.80 Preference Stock issued or issuable pursuant to this Plan have been duly reserved for such issuance; that, except as may be specified by said counsel for Atlantic Richfield, they do not know of any material litigation, proceeding or governmental investigation or labor dispute or labor trouble pending or threatened against or relating to Atlantic Richfield or its consolidated subsidiaries or their respective properties or businesses; that all corporate and other proceedings required to be taken by or on the part of Atlantic Richfield to authorize and to carry out this Plan and to effect the merger contemplated hereby have been duly and properly taken; that this Plan is the valid obligation of Atlantic Richfield, legally binding upon it in accordance with its terms; and such an opinion as to titles to Atlantic Richfield's and its subsidiaries' properties, property interests and assets on the Effective Date of the merger as Sinclair's counsel shall reasonably require. Such opinion shall also cover such other matters incident to the transaction herein contemplated as Sinclair and its counsel may reasonably request, including the form of all papers, the validity of all proceedings, and, if requested, shall include a statement with respect to such counsel's knowledge of the practices followed by Atlantic Richfield and its subsidiaries in acquiring title to real property. In rendering the opinions required above, Ballard, Spahr, Andrews & Ingersoll shall be entitled to rely upon the opinion of Henry B. Weaver, Jr., Esq., Vice President and General Counsel of Atlantic Richfield, as to such matters of fact and law as they may deem appropriate under the circumstances and as to such matters may state that they have made no independent investigation or examination. With respect to title to properties and with respect to foreign subsidiaries, counsel for Atlantic Richfield may rely upon title certificates, opinions of other counsel or other evidence which they deem satisfactory.

(f) Any and all permits, approvals and other actions of any authority required in the opinion of counsel for Sinclair for the lawful consummation of the merger as contemplated by this Plan shall have been obtained, and no such permit, approval or other action shall contain any provision which in the judgment of Sinclair shall be unduly burdensome.

(g) There shall have been received from the Internal Revenue Service a tax ruling satisfactory to counsel for Sinclair to the effect that (1) the merger of Sinclair into Atlantic Richfield will constitute a reorganization within the meaning of Section 368(a)(1)(A) of the Internal Revenue Code of 1954 and therefore that no gain or loss will be recognized to Atlantic Richfield or Sinclair upon such merger; (2) no gain or loss will be recognized to any shareholder of either Sinclair or Atlantic Richfield as a consequence of the merger except with respect to those amounts received by Sinclair shareholders on the sale of fractional interests or amounts paid to Atlantic Richfield or Sinclair shareholders pursuant to the assertion of dissenters' rights; (3) Atlantic Richfield's basis and holding period for all the assets of Sinclair will be determined solely with respect to the basis and holding period of such assets in the hands of Sinclair; and (4) the provisions of Section 306(a) of the Code will not be applicable to any disposition or redemption of the shares of $2.80 Preference Stock of Atlantic Richfield in view of the provisions of Section 306(b)(4) of the Code.

16

(h) The New York Stock Exchange shall have approved for listing on official notice of issuance the $2.80 Preference and Common Stock to be issued by Atlantic Richfield in exchange for Sinclair shares and scrip certificates pursuant to this Plan and upon conversion of debentures and exercise of options as provided in paragraphs 2.4 and 2.5 and the Common Stock of Atlantic Richfield into which said $2.80 Preference Stock is convertible.

## ARTICLE VII.

7.1 Atlantic Richfield and Sinclair agree that this Plan shall be submitted to the shareholders of each of the Constituent Corporations, as provided by law, at separate meetings called and held on December 31, 1968 or on such other date as the Boards of Directors of the Constituent Corporations shall approve. If this Plan is adopted or approved at such meetings, or any adjournment or adjournments thereof, by the affirmative vote of the holders of a majority of the outstanding shares of $3.00 Preference Stock of Atlantic Richfield voting as a class and of the holders of a majority of the outstanding shares of Common Stock of Atlantic Richfield voting as a class (the separate affirmative vote of the holders of a majority of the outstanding shares of each such class also being considered the affirmative vote of the holders of a majority of the outstanding shares of both such classes voting together), as required by the laws of the Commonwealth of Pennsylvania and the Articles of Incorporation of Atlantic Richfield, and by the affirmative vote of the holders of at least two-thirds of the outstanding shares of Common Stock of Sinclair, as required by the laws of the State of New York, then such documents as may be required by law to accomplish the merger shall (if this Plan and the merger shall not have been terminated or abandoned pursuant to the provisions of ARTICLE VIII hereof) be delivered or filed as follows: The appropriate document or documents shall first be delivered to or filed in the Department of State of New York as required by the New York Business Corporation Law. On the day of the filing thereof by the Department of State of New York, or as soon thereafter as possible but in no event more than thirty days thereafter, the appropriate document or documents shall be delivered to or filed with the Department of State of the Commonwealth of Pennsylvania as required by the Pennsylvania Business Corporation Law. The Constituent Corporations shall then do all such further acts or things which may be required to accomplish the merger or which may be required by law.

7.2 If the merger contemplated hereby is not consummated and made effective, each of the Constituent Corporations shall bear its expenses separately incurred in connection with this Plan and in connection with all things required to be done by each of them hereunder.

## ARTICLE VIII.

8.1 Anything contained in this Plan to the contrary notwithstanding, this Plan may be terminated and the merger abandoned at any time (whether before or after the approval or adoption thereof by the shareholders of Atlantic Richfield or Sinclair or of both) prior to the Effective Date of the merger:

(a) By mutual consent of the Constituent Corporations.

(b) By Atlantic Richfield, if any of the conditions set forth in paragraph 6.1 hereof has not been met and has not been waived.

(c) By Sinclair, if any of the conditions set forth in paragraph 6.2 hereof has not been met and has not been waived.

(d) By Atlantic Richfield or by Sinclair, if any suit, action or other proceeding shall be pending or threatened which, in the opinion of its counsel, materially and adversely affects the prospects of the merger.

(e) By Atlantic Richfield, if in its opinion there shall have occurred or been threatened, for any reason, any material and unfavorable change in the condition, financial or otherwise, of Sinclair and its subsidiaries.

BP_CER000061

(f) By Sinclair, if in its opinion there shall have occurred or been threatened, for any reason, any material and unfavorable change in the condition, financial or otherwise, of Atlantic Richfield and its subsidiaries.

(g) By either Constituent Corporation, if in its judgment the number of shares not voted for, or votes cast against, the merger by shareholders of either Constituent Corporation, and the potential or maximum liability of the Surviving Corporation which might result from demands from such dissenting shareholders for payment of the value for their shares, render the merger inadvisable or not in the best interest of such terminating Constituent Corporation or of its shareholders.

(h) By Atlantic Richfield or by Sinclair, if the merger shall not have become effective on or before June 30, 1969, unless such date is extended by the mutual consent of the Boards of Directors of the Constituent Corporations.

8.2 An election by a Constituent Corporation to terminate this Plan and abandon the merger as hereinabove provided shall be exercised on behalf of such corporation by its Board of Directors.

8.3 In the event of the termination and abandonment of this Plan pursuant to the provisions of paragraphs 8.1 and 8.2 hereof, the same shall become void and have no effect, without any liability on the part of either of the Constituent Corporations or its directors or officers or shareholders in respect of this Plan.

8.4 Any of the terms or conditions of this Plan may be waived, at any time prior to the filing of this Plan by the Department of State of Pennsylvania, by the Constituent Corporation which is entitled to the benefit thereof by action taken by its Board of Directors, the Executive Committee of its Board of Directors, its Chairman of the Board or its President; provided, however, that such action shall be taken only if, in the judgment of the Board of Directors, the Executive Committee, the Chairman of the Board or the President taking the action, such waiver will not have a material adverse effect on the benefits intended under this Plan to the shareholders of its or his corporation.

## ARTICLE IX.

9.1 The respective warranties and representations of Atlantic Richfield and Sinclair contained in ARTICLE IV hereof and their agreements contained in ARTICLE V hereof shall expire with, and be terminated by, the merger of Sinclair into Atlantic Richfield, and neither Sinclair nor Atlantic Richfield nor any of their respective directors or officers shall be under any liability whatsoever with respect to any such representation, warranty or agreement after the Effective Date of the merger. This Article shall have no effect upon any other obligation of Sinclair or Atlantic Richfield contained in this Plan, whether to be performed before or after the Effective Date.

## ARTICLE X.

10.1 Atlantic Richfield represents that it will not redeem or repurchase any shares of its $2.80 Preference Stock, by tender or otherwise, within the period ending five years after the Effective Date of the merger.

10.2 This Plan embodies the entire agreement between the parties and there are no agreements, understandings, representations or warranties between the parties other than those set forth herein or herein provided for.

10.3 Any number of counterparts of this Plan may be executed and each such counterpart shall be deemed to be an original instrument but all such counterparts together shall constitute but one instrument.

10.4 Any notice or other communication under or in connection with this Plan shall be in writing and, if to Atlantic Richfield, shall be addressed to Mr. Robert O. Anderson, Chairman of the Board of Directors, Atlantic Richfield Company, 717 Fifth Avenue, New York, New York 10022, and shall be

BP_CER000062

effective when delivered to that address; and, if to Sinclair, shall be addressed to Mr. O. P. Thomas, President, Sinclair Oil Corporation, 600 Fifth Avenue, New York, New York 10020, and shall be effective when delivered to that address; or, in the case of notices or communications to either Constituent Corporation, to such other address as it shall have designated by notice to the other.

IN WITNESS WHEREOF, the Plan of Merger has been signed on behalf of Atlantic Richfield by the Chairman of its Board of Directors, its President or one of its Vice Presidents and by its Secretary or an Assistant Secretary and on behalf of Sinclair by its President or one of its Vice Presidents and by its Secretary or an Assistant Secretary, under their respective corporate seals, as of the day and year first above written.

Attest:                                    ATLANTIC RICHFIELD COMPANY

/s/   R. G. NELSON                         /s/   ROBERT O. ANDERSON
         Secretary                                   Chairman of the Board

Attest:                                    SINCLAIR OIL CORPORATION

/s/   M. V. CARSON, JR.                    /s/   O. P. THOMAS
         Secretary                                   President