IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PREMCOR REFINING GROUP, INC.,** <br><br> **Plaintiff,** <br><br> v. <br><br> **APEX OIL COMPANY, INC., ATLANTIC RICHFIELD COMPANY, ARCO PIPELINE COMPANY, BP PRODUCTS NORTH AMERICA INC., BP PIPELINES (NORTH AMERICA) INC., KOCH PIPELINE COMPANY, and KOCH INDUSTRIES INC.,** <br><br> **Defendants.** | Case No. 3:17-CV-00738-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Premcor Refining Group, Inc. ("Premcor") brought this action seeking contribution costs incurred in remediating environmentally harmful contamination in the Village of Hartford, Illinois, at a refinery owned by Premcor ("the Refinery"), under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.*, ("CERCLA"). The Act specifically provides for a private right of action, and the private-party plaintiff must satisfy four elements to substantiate a prima facie case: (1) The defendant falls within one of four categories of covered persons listed in § 9607(a); (2) The site of the clean-up qualifies as a facility under § 9601(9); (3) A release or threatened release of a hazardous substance under §§ 9601(14) and (22) occurred at the facility; (4) The plaintiff incurred response costs as a result; and (5) The plaintiff's costs are necessary

response costs consistent with the national contingency plan as required under § 9607(a)(4)(B) and § 9601(23)-(25). *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1150 (1st Cir. 1989); *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 719-20 (2d Cir. 1993); *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496-97 (11th Cir. 1996). Instead of allowing discovery into all elements of liability, the case is proceeding under a system of phased discovery. The parties concluded Phase 1 of discovery, which involved fact discovery related to whether each defendant qualifies as a "covered person" under § 9607(a).

Under CERCLA, there are four categories of covered persons, or potentially responsible parties:

> (1) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance[.]

42 U.S.C. § 9607(a)(1)-(4). The parties have dedicated years to this "covered person" discovery phase.

At the close of Phase 1 Discovery, Premcor and the Koch Defendants (Koch Pipeline Company and Koch Industries Inc.) engaged in settlement discussions. The Court stayed their respective discovery deadlines while they solidify the terms of their settlement agreement. (Doc. 328). Further, Defendant Apex Oil Company, Inc. ("Apex") stipulated that it qualifies as a "covered person" under § 9607(a)(2). (Doc. 333). Consistent with that stipulation, the Court resolved Phase 1 issues as to Apex finding it to be a "covered person." (*Id.*).

Now before the Court is Premcor's Motion for Partial Summary Judgment on Phase 1 issues as to Atlantic Richfield Company, Arco Pipeline Company, BP Products North America, Inc. ("BP Products"), and BP Pipelines (North America) Inc. ("BP Pipelines") (collectively the "BP Defendants"). (Doc. 331). The BP Defendants filed a timely response, to which Premcor filed a timely reply. (Docs. 335; 336). For the reasons set forth below, the Court grants in part and denies in part (without prejudice) Premcor's Motion for Partial Summary Judgment.

### LEGAL STANDARD

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Assertions that a fact cannot be or is genuinely disputed must be supported by materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials. FED. R. CIV. P. 56(c)(1). Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party

who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the non-movant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

Premcor argues that the BP Defendants are covered persons under § 9607(a)(2) as "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." In addition, the parties agree that the Refinery qualifies as a "facility" under CERCLA's listed definition. *See* 42 U.S.C. § 9601(9).

### I. Atlantic Richfield

Premcor asserts that Atlantic Richfield is liable for the disposal practices of Old Sinclair, who owned and operated the Refinery from 1950 to 1967, as a result of their subsequent corporate merger. (Docs. 331-4 to 331-7). Old Sinclair merged into Atlantic Richfield two years after it sold the Refinery to Clark Oil in 1967. (*Id.*). After the merger, Atlantic Richfield became the surviving corporation who assumed all liabilities and obligations of Old Sinclair. (Docs. 331-1; 331-2). Based on evidence amassed in Phase 1 discovery, Premcor avers that Old Sinclair undoubtedly disposed of hazardous substances at the Refinery during its nearly two decades of ownership.

Atlantic Richfield filed "amended responses" to Premcor's Requests for Admissions

after Premcor filed the pending motion for partial summary judgment. (Doc. 335-1). Atlantic Richfield contends that its amended responses resolve all of its Phase 1 issues by establishing its status as a covered person. Thus, Atlantic Richfield argues that Premcor's motion should be denied as moot to the extent it relates to Atlantic Richfield.

While Premcor agrees that Atlantic Richfield is, in fact, a covered person under CERCLA, it argues that Atlantic Richfield's amendments to two-year-old discovery responses do not render the motion for summary judgment moot. Premcor states that the amended responses are improper, untimely, and lack necessary detail. Premcor argues that the Court should grant its motion for partial summary judgment as to Atlantic Richfield based on the extensive and undisputed factual record.

The Court agrees with Premcor that the late amendment to Atlantic Richfield's discovery responses do not render the partial motion for summary judgment moot or entirely resolve the issues relevant to Phase 1 discovery. Nevertheless, the Court acknowledges that in its response to Premcor's motion, Atlantic Richfield admits it qualifies as a covered person under CERCLA. As such, the Court grants Premcor's motion for partial summary judgment after Phase 1 discovery as to Atlantic Richfield. The Court finds that Atlantic Richfield is a "covered person" under CERCLA.

II. **Remaining BP Defendants (Arco Pipeline, BP Products, and BP Pipelines)**

Premcor asserts that Arco Pipeline (registered as d/b/a for BP Pipelines) operated one 10-inch pipeline that traversed the Refinery from roughly 1979 to 1984. (Docs. 331-7; 331-10; 331-11). The 10-inch pipeline carried petroleum product. Arco Pipeline held maintenance responsibilities of this pipeline, which was made of bare steel with no

corrosion protection. (Docs. 331-7; 331-10). As for the two other BP Defendants (BP Products and BP Pipelines), Premcor connects each of them to a 12-inch pipeline at the Refinery called the Stanolind line, which also transported petroleum product. (Docs. 331-2; 331-13 to 331-21). Arco Pipeline admitted that when it ceased operations of the 10-inch pipeline, it did not purge the leftover product from the pipeline. (Doc. 331-4). Premcor's evidence shows that BP Products and BP Pipelines also did not purge product from the Stanolind line once abandoned. (Docs. 331-20; 331-21).

In its summary judgment motion, Premcor primarily argues that this abandoned petroleum product and crude oil became waste that commingled with corroding and hazardous metals in the pipelines. Premcor points to evidence of extensive corrosion, holes, and malfunctioning clamps to show that this hazardous mixture leaked into the environment surrounding the pipelines.

    **a. Petroleum Exclusion**

As outlined above, covered persons under CERCLA include those who, at the time of disposal of any hazardous substance, owned or operated any facility at which such hazardous substances were disposed. The term "hazardous substance," as defined under CERCLA, explicitly excludes "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance," and "natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas)." 42 U.S.C. § 9601(14).

The BP Defendants argue that Premcor's claims involve petroleum (either in the form of crude oil or refined petroleum products) left in abandoned pipelines that leaked

into the ground. According to the BP Defendants, Premcor attempts to circumvent the petroleum exclusion with its assertions that the unpurged petroleum product transformed into waste that commingled with the pipeline materials to become hazardous. The BP Defendants contend that Premcor's claims based on the ownership of the petroleum pipelines must account for the petroleum exclusion.

On the contrary, Premcor argues that, as its ample evidence demonstrates, the released materials from the pipelines were neither unadulterated petroleum nor petroleum mixed with non-hazardous substances. Premcor also urges that it identified specific CERCLA-listed hazardous substances present at the Refinery and introduced evidence that the pipelines released materials contaminated by other hazardous substances, namely the corroded pipelines.

CERCLA's relevant legislative history indicates that Congress intended the petroleum exclusion "for oil spills, not for releases of oil which has become infused with hazardous substances through use." *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 267 (3d Cir. 1992). The exclusion covers fuel oil and leaded gasoline and any indigenous components in refined or unrefined gasoline, or any such components added in the refining process even if the components would themselves be considered hazardous substances. *Two Rivers Terminal, L.P. v. Chevron USA, Inc.*, 96 F. Supp. 2d 432, 443 (M.D. Penn. 2000). To be sure, many substances associated with petroleum fall outside the scope of CERCLA's petroleum exclusion. *Cose v. Getty Oil Co.*, 4 F.3d 700, 707 (9th Cir. 1993) (crude oil tank bottoms dumped at waste sites find no protection under the exclusion); *United States v. Western Processing Co., Inc.*, 761 F. Supp. 713, 724 (W.D. Wash. 1991) (tank

bottom waste sludge not excluded from CERCLA coverage). In contrast, "soil that has been contaminated by nothing other than unadulterated petroleum has been held to qualify for the [p]etroleum [e]xclusion." *Members of Beede Site Group v. Federal Home Loan, Mortg. Corp.*, 968 F. Supp. 2d 455, 460 (D.N.H. 2013).

In CERCLA cases, once the plaintiff alleges and provides supporting evidence of a release or threatened release of hazardous substances, the party asserting the benefit of the petroleum exclusion (usually the defendant) bears the burden of proof on that issue. *Tosco Corp. v. Koch Industries, Inc.*, 216 F.3d 886, 893 n. 5 (10th Cir. 2000) (citing *Organic Chem. Site PRP Group v. Total Petroleum Inc.*, 58 F. Supp. 2d 755, 763 (W.D. Mich. 1999)); *see also Marrero Hernandez v. Esso Standard Oil Co. (Puerto Rico)*, 597 F. Supp. 2d 272, 290 (D.P.R. 2009); *Johnson v. James Langley Operating Co., Inc.*, 226 F.3d 957, 963 n. 4 (8th Cir. 2000). The petroleum exclusion requires the defendant to controvert the plaintiff's evidence concerning the hazardous composition of the petroleum product found in the soil, or otherwise at the site, to demonstrate its entitlement to the exclusion. *Tosco Corp.*, 216 F.3d at 893-94.

Through several scheduling orders, the Court has limited Phase 1 discovery to "covered person" issues and has excluded inquiries into the extent or allocation of each covered person's liability or the petroleum exclusion. For these BP Defendants, however, the petroleum exclusion necessarily overlaps with the covered person analysis. To determine if the BP Defendants are covered persons, the Court must decide that a hazardous substance leaked from the pipelines. But if the leaked substance falls under the petroleum exclusion, it is not considered hazardous. And if no hazardous substance leaked

from the pipelines, the BP Defendants do not qualify under the definition of covered persons.

Indeed, in its two pages of argument dedicated to the hazardous substances released from Arco Pipeline, BP Products, and BP Pipelines' abandoned pipelines, Premcor references the petroleum exclusion five times. Naturally, in doing so, Premcor attempts to demonstrate that the petroleum exclusion does not apply. But the determination of whether it applies is critical to the covered person analysis specifically related to these BP Defendants. Notably, there is no contention that these defendants owned the Refinery at large, or that they owned multiple areas of the Refinery, unlike other defendants in this action. Arco Pipeline, BP Products, and BP Pipelines owned and operated pipelines that transported petroleum product and crude oil. Certainly, Premcor labors heartily to highlight evidence that the petroleum product left in the pipeline falls outside the petroleum exclusion because it was waste that became hazardous after commingling with hazardous metals in the corroding pipes. But the burden to show entitlement to the exclusion rests upon the BP Defendants. Because they carry this burden, they deserve a proper opportunity to controvert Premcor's evidence concerning the hazardous composition of the substance that purportedly leaked from the pipelines at the Refinery. Of course, the BP Defendants have been precluded from discovery into the exclusion because of the Phase 1 discovery limitations imposed in the scheduling orders.

The Court agrees with the BP Defendants that, because Premcor's evidence implicates the petroleum exclusion, the determination as to whether the BP Defendants are covered persons is premature. The Court must allow discovery into the petroleum

exclusion before deciding whether it applies. For this reason, the Court denies Premcor's motion for partial summary judgment as it relates to Arco Pipeline, BP Products, and BP Pipelines. This denial is without prejudice, and Premcor is invited to file a dispositive motion as to covered person status after discovery concludes for the petroleum exclusion.

### a. Expert Witness Challenges

There is another issue worth addressing as this case progresses. In their response to Premcor's motion, the BP Defendants challenged Premcor's experts under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). This was an inappropriate vehicle to raise these arguments. By local rule, to respond to these challenges, Premcor was necessarily limited to a five-page reply brief and was allowed only 14 days to submit such a reply. *See* SDIL-LR 7.1(a)(4) & (b)(1)(B). If the BP Defendants properly filed a motion to exclude expert witness testimony, Premcor would have received the full benefit of a responsive briefing and 30 days to respond. *See* SDIL-LR 7.1(a)(3) & (b)(1)(A). To ensure that each party's *Daubert* arguments are heard fairly and fully, the Court directs the BP Defendants, if they wish to proceed on such arguments in the future, to file a separate motion to exclude expert testimony. That way, the Court can properly evaluate such arguments.

## CONCLUSION

For the reasons discussed above, Premcor's Motion for Partial Summary Judgment (Doc. 331) is **GRANTED in part** as to Atlantic Richfield Company and **DENIED in part** as to the remaining BP Defendants. This partial denial is without prejudice. Premcor can again move for partial summary judgment as to "covered person" issues for Arco Pipeline

Company, BP Products North America, Inc., and BP Pipelines (North America) Inc. after the parties complete discovery regarding the petroleum exclusion. The Court **DIRECTS** the parties meet and confer as to whether the operative scheduling order needs to be updated to explicitly include inquiries into the petroleum exclusion for Phase 2. If the parties determine such an update is necessary, a new proposed scheduling order shall be submitted via email to NJRpd@ilsd.uscourts.gov on or before **April 29, 2024.**

**IT IS SO ORDERED.**

DATED:  March 29, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**