UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE PREMCOR REFINING GROUP INC., | |
| Plaintiff, | Case No. 3:17-cv-738-NJR |
| v. | District Judge Nancy J. Rosenstengel |
| APEX OIL COMPANY, INC., *et al.*, | CJRA Track: C |
| Defendants. | |

**JOINT MOTION FOR ENTRY OF SETTLEMENT AGREEMENT AND DISMISSAL**

COME NOW Plaintiff The Premcor Refining Group, Inc. ("Premcor") and Defendant, Koch Industries, Inc. ("Koch") (collectively, "Parties") by and through undersigned counsel, and JOINTLY MOVE for this Court to approve and enter the settlement agreement ("Agreement") attached hereto as Exhibit A, barring contribution claims pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") against Koch for matters addressed in the Agreement, and to dismiss Koch from the above captioned matter accordingly. In support thereof the Parties state as follows:

**I.     Background**

1.     In 2005, the State filed an Amended Complaint against Premcor and Apex Oil Company, Inc. in Madison County Circuit Court ("State Action") relating to contamination at the Hartford Refinery. On August 3, 2006, Premcor filed a Third-Party Complaint against various third-party defendants, including Koch, under the Illinois Joint Tortfeasor Contribution Act. 740 ILCS 100/2 ("Contribution Act").

2.     On May 30, 2013, the State filed a Third Amended Complaint in the State Action. It added new claims for nuisance and trespass and added additional allegations relating to hazardous wastes at the Refinery. The State's Third Amended Complaint generally sought, *inter*

*alia:* (1) to permanently enjoin Premcor and Apex to abate a common law or statutory public nuisance arising from contamination, including hazardous wastes, at the Refinery, *see* 3d Amd. Compl., Count 1 ¶ 7 and Prayer for Relief; (2) to permanently enjoin Premcor and Apex to cease and desist from further violations of the Illinois Environmental Act and associated regulations and to properly remediate the soil and groundwater, *id.* at Count III; and/or (3) reimbursement of response costs and/or fees incurred by the State. *Id.* at Count IV.

3. On July 31, 2013, Premcor filed its Fourth Amended Third-Party Complaint against various Third-Party Defendants, including Koch, seeking contribution pursuant to the Contribution Act.

4. On July 13, 2017, Premcor filed a complaint in the above captioned action (the "Federal Action"), naming Koch as a defendant, among others, and alleging cost recovery claims pursuant to CERCLA associated with addressing the hazardous substances at and around the Refinery. Koch, like other Defendants, responded to the complaint by moving to dismiss the complaint based on various grounds and moving to stay. The Court issued an order partially denying these motions. (ECF Dkt. #189).

5. On or about May 22, 2018, the State and Premcor filed a Consent Order with Madison County Circuit Court to resolve the State's claims against Premcor. On July 26, 2018, subsequent to reviewing written objections to the Consent Order and conducting a full hearing on the State's and Premcor's motion for good faith finding, the Madison County Circuit Court entered the Consent Order and found it to be in good faith.

6. The Consent Order defined "Refinery Defendants" to include Koch. *See* Consent Order at ¶ III.N. The Consent Order further provided:

> This Consent Order is not a resolution of liability as to the Refinery Defendants under Section 113(f)(2) of CERCLA (42 U.S.C. §§

2

> 9613(f)(2)) or Section 113(f)(3)(B) of CERCLA (42 U.S.C. § 9613(f)(3)(B)) or any other Environmental Laws. Nothing in this Consent Order constitutes a satisfaction of or release from any claim or cause of action against the Refinery Defendants for any liability such person may have under CERCLA, or any Environmental Laws, including but not limited to any claims for costs, damages, and interest under Section 107 of CERCLA (42 U.S.C. § 9607). Specifically, nothing in this Consent Order constitutes a release of liability of the Refinery Defendants or limits Premcor's rights in a CERCLA action against the Refinery Defendants, including but not necessarily limited to <u>The Premcor Refining Group Inc. v. Apex Oil Company, Inc. et al.</u>, Case No. 3:17-cv-738 in the Southern District of Illinois.

*Id.* at ¶ XI.K.

7.  Entry of the Consent Order extinguished Premcor's claim under the Contribution Act against Koch pursuant to Section 2(e) of the Contribution Act. 740 ILCS 100/2(e).

8.  Subsequent to the entry of the Consent Order and with leave of court, Premcor filed a First Amended Complaint in the Federal Action on or about August 30, 2018 (ECF Doc. #130). The First Amended Complaint named Koch as a defendant along with other defendants and added contribution claims pursuant to CERCLA. 42 U.S.C. § 9613(f)(3)(B).

9.  On October 26, 2021, with leave of court, Premcor filed a Second Amended Complaint. (ECF Doc. #274), which contained the same allegations against Koch. Koch filed an Answer and Affirmative defenses, denying the allegations in the Second Amended Complaint on November 15, 2021. (ECF Doc. #285).

10.  Koch has now reached an Agreement with the State and Premcor (hereinafter, collectively, the "Settling Parties"), including settlement of CERCLA claims in connection with the Refinery as set out in the Agreement. Koch will pay money, $8,490,000.00, that will be used "consistent with the Consent Order . . . for the sole purpose of paying for Work at the Refinery, pursuant to the terms set forth in the Consent Order." *See* Exh. A at ¶ 40. In exchange for these

3

monies paid by Koch, the State and Premcor have agreed to release Koch from various existing and potential claims that the State and/or Premcor have or may have in the future against Koch, including CERCLA liability with respect to the Refinery as set out in the Agreement. *Id.* at ¶¶ 42, 45. The Settling Parties have also agreed to dismiss, with prejudice, and at their cost, all claims which they have asserted, or could have asserted, against each other in the above-styled matter. *Id.* at ¶ 54.

11. Koch and Premcor recognize they view the facts of the case differently and, therefore, stipulate that any description of the facts set forth herein is made for purposes of settlement only. According to Premcor:

    a. Koch's predecessor, Wood River Oil and Refining Company, constructed a portion of the Refinery and began operating this portion of the Refinery in approximately 1941. Koch owned and operated the Refinery from 1941 until it sold the Refinery to Sinclair Refining Company in 1950. Koch's operations at the Refinery from 1941 to 1950 are depicted on Exhibit A-1 to Exh. A.

    b. During the period Koch owned and operated the Refinery from approximately 1941 to 1950, Premcor alleges that wastes were disposed of at the Refinery by open dumping, burying the wastes in unlined pits, disposing of the wastes in water bodies, and/or other means. This included the alleged disposal and/or release of wastes detailed in the Consent Order's Strategic Plan that are classified as hazardous substances under CERCLA.

*See gen'ly* 2d Amd. Compl. (ECF Doc. #274); Exh. A at ¶ 33.

12. Koch denies these allegations and believe it bears no responsibility for contamination at the Refinery. *See gen'ly* Koch's Answer (ECF Doc. #285); Exh. A at ¶ 34.

13. Premcor believes it has valid responses to each and every defense and the evidence Koch would have presented but for this Agreement.

14. The State has independently evaluated information concerning Koch's potential liability and defenses. Over its years of involvement in and oversight of the Hartford area, the State has had the opportunity to consider evidence concerning Koch's alleged contribution to contamination beneath, at and/or around the Refinery. Through its knowledge, information, and its evaluation, the State has reached the conclusion that the Agreement with Koch is fair and reasonable.[1]

15. Premcor, the State, and Koch have concluded that the amount of compensation in the Agreement provides adequate compensation for potential contributions to the contamination beneath, at and/or around the Refinery, as addressed in the Agreement.

16. The Agreement resolves the liability of Koch for matters addressed in the Agreement as detailed therein, including, as described in the Agreement, as to liability for claims asserted against Koch set forth or that could be set forth in this Federal Action. The claims set forth in this action include CERCLA claims. As part of the Agreement, the Parties are seeking dismissal and a finding of contribution protection for Koch in this action for the matters addressed in the Agreement pursuant to CERCLA, 42 U.S.C. 9613(f)(2). This is further outlined in the attached Agreement.

17. The Agreement is the product of years of litigation, motion process, discovery, and a long negotiation process, including multiple settlement attempts. The attached Agreement

---

[1] The State is not a party to the Federal Action. It has, however, reviewed this motion and does not object to any representations herein.

is the end result of a full day mediation with an independent third-party mediator.

## II. <u>Legal Analysis.</u>

### A. The law favors settlement.

18. "Settlements are at the heart of the Superfund statute." *Atl. Richfield Co. v. Christian,* 140 S.Ct. 1335, 1355 (2020). "The Act encourages potentially responsible parties to enter into such agreements." *Id.* (discussing availability of covenants not to sue in 42 U.S.C. 9622(c)(1) and contribution protection in 42 U.S.C. 9613(f)(2) as CERCLA mechanisms that encourage settlement). "It is the policy of CERCLA to encourage settlements." *U.S. v. NL Indus., Inc.,* 2006 WL 8455840 *3 (S.D. Ill. Sept. 25, 2006).

19. "[T]here is a strong public policy in favor of settlements, particularly in very complex and technical regulatory contexts." *U.S. v. Davies,* 261 F.3d 1, 27 (1st Cir. 2001). Congress created CERCLA to encourage early settlement and reduce the time and expense of enforcement litigation that diverts resources from cleanup and restoration. *U.S. v. Fort James Operating Co.,* 313 F.Supp.2d 902, 908 (E.D. Wis. 2004). "'[T]he desirability of encouraging out-of-court settlements in order to lighten the judicial caseload create[s] a presumption in favor of approving the settlement.' This is especially true in complex CERCLA litigation which would place an enormous strain on the judicial caseload if settlements were not encouraged." *U.S. v. SCA Serv. of Ind., Inc.,* 827 F.Supp. 526, 531 (N.D. Ind. 1993) (quoting *Donovan v. Robbins,* 752 F.2d 1170, 1177 (7th Cir. 1985)).

20. Although the "vast majority" of cases involving court approval of consent decrees involve cases where the United States is a party, "[i]t is common for CERCLA consent decrees between or among private parties and a state also to be submitted for court approval." *City of Bangor v. Citizens Comm. Co.,* 532 F.3d 70, 92 (1st Cir. 2008). "In reviewing consent decrees . .

. the trial court must defer to the expertise of the agency and to the federal policy encouraging settlement." *U.S. v. George A. Whiting Paper Co.,* 644 F.3d 368, 372 (7th Cir. 2011) (evaluating a CERCLA settlement jointly proposed by the United States and State of Wisconsin and affirming decision to grant motion for settlement); *Id.* at 374 ("We reiterate that a district court should defer to the Government's expertise").

21. "CERCLA does not mandate a particular test for courts that have been asked to approve a consent decree under either 42 U.S.C. § 9622(d)(1)(A), when the United States is a party or under the contribution section, § 9613(f) when the state is a party." *City of Bangor v. Citizens Comm. Co.,* 532 F.3d 70, 93 (1st Cir. 2008). Rather, the inquiry is similar to the one courts use when reviewing consent decrees generally. *Id.* "[S]ettlements do not demand perfection. There are many factors involved. A PRP's assumption of open-ended risks may merit a discount on comparative fault, while obtaining a complete release from uncertain future liability may call for a premium." *Id.* at 98.

22. A court must conclude the agreement is procedurally and substantively fair, reasonable, and consistent with CERCLA's objectives. *Arizona v. City of Tucson,* 761 F.3d 1005, 1012 (9th Cir. 2014). CERCLA was "designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Atl. Richfield,* 140 S.Ct. at 1345. *See Bernstein v. Bankert,* 733 F.3d 190, 200 (7th Cir. 2013) (same).

23. Here, the first policy is not at issue: the Consent Order between Premcor and the State helps ensure a prompt and effective clean-up. Settlement payments, such as the one being made by Koch in the Agreement, will continue to fund the Work in the Consent Decree and ensure it is completed fully and efficiently. *See U.S. v. Akzo Coatings of Am., Inc.,* 949 F.2d

7

1409, 1439 (6th Cir. 1991) (rejecting settlement would lengthen time to remedy a contaminated site); *U.S. v. NCR Corp.,* 2020 WL 8574835, *6 (W.D. Mich. 2020) (finding settlement fair and reasonable and serving CERCLA's goal where it deposited money in special account to fund further response actions at the site).

24. The Agreement satisfies the second policy by ensuring PRPs, such as Koch, share in the responsibility for hazards they created at the Refinery and bear their approximate share of that responsibility. Specifically, Koch is paying millions of dollars for certain hazardous substances which Premcor alleges Koch disposed of at the Refinery during their period of ownership and operation from 1940 to 1950.

**B. The Agreement is both procedurally and substantively fair.**

25. The Agreement is also procedurally fair. "Fair and reasonable are comparative terms." *Arizona,* 761 F.3d at 1012. (omitting citations). A court's "reasonableness inquiry, like that of fairness, is a pragmatic one, not requiring precise calculations." *Charter Intern.,* 83 F.3d at 521.

26. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness and bargaining balance." *U.S. v. Cannons Eng. Corp.*, 899 F.2d 79, 86 (1st Cir. 1990) Procedural fairness is typically satisfied where the settlement is reached "through arms-length negotiations" and the parties acted in good faith. *U.S. v. Grand Rapids, Michigan*, 166 F.Supp.2d 1213, 1219 (W.D. Mich. 2000).

27. This is a real settlement, with significant consideration, through which all parties negotiated and compromised their positions in order to peacefully resolve the disputes among them without resorting to the expense and uncertainty of a trial.

28. Nor is there anything procedurally unfair about the Agreement. The Parties

negotiated at arm's length following the course of several years of litigation and discovery. The parties utilized mediation to facilitate settlement.

29. The Parties engaged in a long and detailed discovery process, including both fact and expert discovery. Both Parties proffered expert reports by multiple experts, and both Parties deposed each other's expert witnesses. After fact and expert discovery on Phase 1 was completed and prior to the Parties starting the process of briefing summary judgment, they engaged in a mediation. Ultimately, the Parties reached a settlement in principle and notified the State. The State then also agreed to the settlement in principle. While the written agreement was being finalized, the Parties notified the Court they had reached a settlement in principle on July 24, 2023. (ECF Doc. #326).

30. Even after reaching an agreement in principle, Premcor, Koch, and the State spent several months negotiating and ironing out the specific terms to be included in their written Agreement. Premcor, the State, including both the Attorney General's office and the Illinois Environmental Protection Agency ("IEPA"), and Koch, all represented by multiple attorneys, engaged in protracted, fair, arm's length negotiations that were consistent with the policies and goals of CERCLA and evaluated the merits of the claims and defenses at issue. *See Grand Rapids*, 166 F.Supp.2d at 1219.

31. The Parties exchanged multiple revised drafts of the Agreement and had regular communications about the draft Agreement. The Agreement went through multiple layers of review at the State and by the Parties. "That so many affected parties, themselves knowledgeable and represented by experienced lawyers, have hammered out an agreement at arm's length and advocate its embodiment in [an agreement] itself deserves weight in the ensuing balance." *U.S. v. Davies,* 261 F.3d 1, 21 (1st Cir. 2001).

32. Second, the Agreement is substantively fair. "Substantive fairness introduces into the equation concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *Cannons*, 899 F.3d at 87. Settlement terms must be "based on, and roughly correlated with some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates" of harm each caused." *Id.* The court must "gauge the adequacy of the settlement amounts to be paid by settling [parties by comparing] the proportion of total projected costs to be paid by the settlors with the proportion of liability attributable to them, and then … factor into the equation any reasonable discount for litigation risks, time savings, and the like[.]" *Arizona,* 761 F.3d at 1012 (citations omitted, brackets in original).

33. "Early settlement is an integral part of the statutory plan . . . When such settlement is entered, it reduces the potential liability of the nonsettling parties by the amount of the settlement instead of by the settling parties' equitable share of the contamination, and thus can lead to 'disproportionate liability' for nonsettlors." *Emhart Indus. Inc. v. U.S. Dept. of the Air Force,* 988 F.3d 511, 517-18 (1st 2021) (quoting *Cannons,* 899 F.2d at 91). *See Grand Rapids,* 166 F.Supp. at 1222 ("disproportionate liability is not an indication of substantive unfairness" but is inherent in the statutory scheme); *State of N.Y. v. Panex Indus., Inc.*, 2000 WL 743966, *2 (W.D.N.Y. 2000) (roughly correlating the settlement with some measure of fault "does not mean . . . that CERCLA precludes leaving a disproportionately large share of liability for the non-settling defendants").

34. "The reality is that, all too often, litigation is a cost-ineffective alternative which can squander valuable resources, public as well as private." *Cannons,* 899 F.2d at 90. Thus, where the settlement procedures are fair, a court can treat private parties in a CERCLA

settlement as "entities who can protect themselves." *City of Bangor,* 532 F.3d at 98. Indeed, "[s]ophisticated actors know how to protect their own interests, and they are well equipped to evaluate risks and rewards." *U.S. v. Charles George Trucking, Inc.,* 34 F.3d 1031, 1088 (1st Cir. 1994). In such circumstances, a court can "usually confine its inquiry to the . . . proposed allocation of responsibility as between settling and non-settling parties." *City of Bangor,* 532 F.3d at 98. It serves "no useful purpose [for the court] to go further and focus the lens of inquiry on the fairness of each" PRPs contribution. *Id.* A rough approximation of liability under such circumstances will suffice. *Charles George Trucking, 34 F.3d* at 1089.

35.     Settlements, moreover, are built on "compromise and compromise in turn is a product of judgment." *Davies,* 261 F.3d at 25. Thus, "the ultimate measure of accountability is the extent of the overall recovery, not the amount of money paid by any individual defendant." *Id.* Discounts on maximum potential liability as an incentive to settle are "considered fair and reasonable under Congress's statutory scheme." *Id.*

36.     The Agreement is substantively fair. First, the State of Illinois is a party to and has approved the Agreement. Courts afford deference to state agencies that sign onto CERCLA settlement agreements. *Arizona,* 761 F.3d at 1014; *City of Bangor,* 532 F.3d at 94. Particularly where the state agency has "expertise concerning the cleanup of the Site," the Court will give deference to the state's "judgment concerning the environmental issues underlying the CERCLA consent decrees at issue." *Arizona*, 761 F.3d at 1014. *See Fort James,* 313 F.Supp.2d at 910 (deferring to state and federal agencies and approving settlement as reasonable where the "only imaginable alternative" was "complex and probable lengthy litigation" even though consent decree did not mandate the PRP "pay its full equitable share" of damages).

37.     Here, the IEPA and the Illinois Attorney General's office has significant expertise

regarding contamination at the Refinery. It has exercised jurisdiction over the Refinery since approximately 2003 when the Environmental Protection Agency ("EPA") took oversight of the Village of Hartford and the State of Illinois took oversight of the Hartford Refinery. The State was involved in litigation regarding contamination at the Refinery from 2003 until that litigation ended. It has overseen Premcor's work at the Refinery since it began and negotiated a Consent Decree with Premcor to fully investigate and remediate the contamination at the Refinery in 2018. The IEPA's oversight of the Refinery through the Consent Order will continue until remediation is complete.

38. Further, the State has expertise regarding the defendants' involvement and contribution to contamination at the Refinery. The State was involved in developing, reviewing, and approving site modeling and sitewide investigation work. It was involved in the State Action prior to the dismissal of the CERCLA defendants. Finally, the State has been a party to eight other settlement agreements with parties alleged to have contributed to the contamination at the Refinery. The Court should afford deference to the State's approval of the Agreement.

39. Second, the Agreement is substantively fair based on the amount paid by Koch in light of their position at the Hartford Refinery and potential litigation risks. Koch owned and operated the Refinery for the shortest period of time of any past owner: it owned and operated the Refinery for less than ten years (1941-1950), whereas Atlantic Richfield's predecessor owned and operated it for 17 years (1950-1967), Apex owned and operated it 21 years (1967 to 1988), and Premcor operated the Refinery for 14 years (1988 to 2002). Koch's operations occupied less geographic space than its predecessors, prior to significant expansion into the Refinery's full footprint; it had almost no operations on the River Dock or the South Property. *See* Exh. A-1 to Exh. A. It also had the lowest refining throughput. *See* 2d Amd. Compl. (ECF

Doc. #274), Exh. 1 (Premcor Consent Order) at App. 2, p. 2-6.

40.     Additionally, the Agreement is fair because of anticipated defenses and potential allocation factors that are unique to Koch. Unlike each of the other remaining defendants, Koch's operations did not occupy the entire Refinery property. *Id.* Large, hazardous waste disposal areas with significant remediation costs, like the River Dock lagoons, were constructed by other parties after Koch sold the Refinery. Thus, these disposal areas were never used by Koch. The most time had passed since Koch's operations. Koch also contended it utilized specific recycling processes that would have resulted in less disposal of hazardous substances at the Refinery. Premcor anticipated significant motions and litigation costs relating to information regarding Koch's litigation defenses. Settlement was an efficient use of the Parties' and judicial resources in light of Koch's significantly more limited operations at the Refinery compared to the other remaining defendants.

41.     Third, the Agreement is procedurally fair and was reached between multiple sophisticated, private parties, each with their own respective interests, following extensive negotiations, including mediation. "Sophisticated actors know how to protect their own interests, and they are well equipped to evaluate risks and rewards." *Charles George,* 34 F.3d at 1088. *See City of Bangor,* 532 F.3d at 95 (quoting *Buckhannon Bd. & Care Home, Inc. v. W. VA. Dep't of Health & Human Res.,* 532 U.S. 598, 604 n.7 (2001)) (when approving a settlement between two PRPs in the context of a Consent Decree with the State of Maine, the court noted "private settlements 'do not entail the judicial approval and oversight involved in consent decrees'"). Nothing indicates the Agreement is unfair to the State, the Parties, or any remaining defendant. Hence, there is no basis to deny entry of the Agreement.

    **C. The Court should grant Contribution Protection to Koch for the matters addressed in the Agreement.**

42. A "person who has resolved its liability to the United States or a state for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement." 42 U.S.C. § 113(f)(3)(B). *See Territory of Guam v. U.S.,* 141 S.Ct. 1608, 1612 (2021). "A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement." 42 U.S.C. § 113(f)(2). *See U.S. v. Colo. & Eastern R. Co.*, 50 F.3d 1530, 1537 (10th 1995).

43. Section 113(f) was intended to foster settlements and "to provide PRPs a measure of finality in return for their willingness to settle." *Cannons Eng.,* 899 F.2d at 92. The settlement is a qualifying agreement under § 113(f)(2). The Agreement resolves Koch's liability to the State for response costs. Accordingly, Koch is protected from contribution claims for matters addressed by the Agreement.

44. Additionally, Courts also afford contribution protection to parties that settle with one another in a CERCLA action. Courts addressing this issue have determined that PRPs who settle with one another are protected from contribution claims that other PRPs may bring. *SCA Serv.,* 827 F.Supp. at 532. *See id.* (collecting cases where the court granted contribution protection under CERCLA to a PRP that settles with another PRP).

45. No other PRPs, therefore, are permitted to bring contribution claims against Koch for matters addressed in the Agreement. *See Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 765 (7th Cir. 1994) (discussing "matters addressed" in the context of contribution protection

14

afforded by a settlement).

46. The Court should approve and enter the Agreement, granting contribution protection to Koch pursuant to 42 U.S.C. 9613(f) for the matters addressed in the Agreement. *See* Exh. A at ¶ 59. Accordingly, Koch should be dismissed from the Action.

### D. No Hearing is required.

47. CERCLA does not require a hearing on a motion to enter a settlement. *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 1987 WL 27368, *2 (N.D. Ill. 1987). "Requiring hearings to review the reasonableness of CERCLA consent decrees as a matter of course would frustrate the statutory objective of expeditious settlement." *Charles George,* 34 F.3d at 1085. *See U.S. v. Metro. St. Louis Sewer Dist.,* 952 F.2d 1040, 1044 (8th Cir. 1992) (denying evidentiary hearing on approval of Consent Decree where objections could be filed); *United States v. Bliss,* 133 F.R.D. 559, 568 (E.D. Mo. 1990) (issues regarding entering Consent Decree were fully briefed, and "motions do not usually culminate in evidentiary hearings").

48. Holding a hearing, moreover, may involve the litigation of issues including the risk of victory or defeat, the risk of a high or low verdict, the strengths or weaknesses of a party's case, or a party's solvency. *Edward Hines,* 1987 WL 27368 at *2. "This miniature trial would expose the parties to the very uncertainty and expense that a settlement is meant to avoid." *Id. See In re Acushnet River & New Bedford Harbor, Proceedings Re Alleged PCB Pollution,* 712 F.Supp. 1019, 1031 n.21 (D. Mass. 1989) (evidentiary hearing amounting to trial on the merits would be impractical and frustrate the intent of Congress to encourage settlement).

### III. Conclusion

49. Accordingly, having demonstrated that the Agreement is procedurally and substantively fair, reasonable, and consistent with CERCLA's objectives, the moving parties

15

respectfully move this Court to: (a) grant this motion and approve and enter the Settlement Agreement, which bars contribution claims by or against Koch pursuant to 42 U.S.C. 9613(f) and vests non-settling defendants with an offset of liability equal to the amount of the Agreement; (b) dismiss the claims of Premcor against Koch with prejudice; and (c) award any other relief deemed just and appropriate.

Dated: April 25, 2024

By: /s/ *Erika M. Anderson*

| | |
|---|---|
| **DOWD BENNETT, LLP** | **GOLDENBERG, HELLER & ANTOGNOLI P.C.** |
| James F. Bennett | Mark C. Goldenberg |
| jbennett@dowdbennett.com | mark@ghalaw.com |
| Erika M. Anderson | 2227 South State Route 157 |
| eanderson@dowdbennett.com | Edwardsville, IL 62025 |
| 7733 Forsyth Blvd. Suite 1900 | 618.650.7102 (T) |
| St. Louis, Missouri 63105 | 618.656.6230 (F) |
| 314.889.7300 (T) | |
| 314.863.2111 (F) | |

*Attorneys for Plaintiff, The Premcor Refining Group*

By: */s/ Jonathan R. Waldron (with permission)*
**STINSON, LLP**
Jon A. Santangelo (IL6202867)
Jonathan R. Waldron (IL6292058)
7700 Forsyth Blvd, Suite 1100
St. Louis, MO 63105
jon.santangelo@stinson.com
jonathan.waldron@stinson.com

*Attorneys for Defendant Koch Industries, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 25th of April 2024, a true and correct copy of the foregoing was filed with the Clerk of Court to be served on all counsel of record by operation of the Court's electronic filing system.

/s/ Erika Anderson