IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PREMCOR REFINING GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> APEX OIL COMPANY, INC., ATLANTIC RICHFIELD COMPANY, ARCO PIPELINE COMPANY, BP PRODUCTS NORTH AMERICA INC., and BP PIPELINES (NORTH AMERICA) INC., <br><br> Defendants, <br><br> v. <br><br> TRAVELERS CASUALTY & SURETY COMPANY, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, NORTHLAND CASUALTY COMPANY, ST. PAUL SURPLUS LINES INSURANCE COMPANY, and TRAVELERS INDEMNITY COMPANY, <br><br> Intervenors. | Case No. 3:17-CV-00738-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court are two Motions to Compel—one filed by Defendants Atlantic Richfield Company, Arco Pipeline Company, BP Products North America Inc., BP Pipelines (North America), Inc. ("the BP Defendants"), and Apex Oil Company, Inc. ("Apex") (collectively, "Defendants") (Doc. 364), and one filed by Plaintiff Premcor Refining Group, Inc. ("Premcor") (Docs. 366, 378). Defendants filed timely responses in

opposition to Premcor's Motion to Compel (Docs. 370, 372), and Premcor filed a timely response in opposition to Defendants' Motion to Compel (Doc. 371). Defendants also filed a timely reply brief, as did Premcor. (Docs. 373, 375, 376). Travelers Casualty & Surety Company, St. Paul Fire and Marine Insurance Company, Northland Casualty Company, St. Paul Surplus Lines Insurance Company, and Travelers Indemnity Company (collectively, "Travelers Intervenors") moved to intervene to file a response in opposition to Premcor's Motion to Compel, which the Court permitted. (Docs. 369, 383, 384).

## BACKGROUND

This case has a protracted history and involves environmental remediation of contamination related to leaks and spills from pipelines in the Village of Hartford, Illinois, at an oil refinery owned by Premcor ("Premcor Refinery"). Premcor alleges that the remediation includes hazardous waste disposed of by Defendants.

In 2003, the State of Illinois initiated a case in the Circuit Court of Madison County against Premcor and Apex, seeking to recover environmental remediation costs arising from leaks and spills from pipelines within the Village of Hartford ("the State Case"). (Doc. 364). In 2006, Premcor filed third-party claims for contribution in the State Case against multiple former owners and/or operators of the Refinery or pipelines at the Refinery under the Illinois Contribution Act, 740 ILCS 100/2. (*Id.*). It also filed a crossclaim against Apex. (*Id.*). After years of litigation, Apex settled with the State of Illinois in 2016, and the state court dismissed Premcor's contribution claims against Apex. (*Id.*) Apex was then dismissed from the lawsuit. (*Id.*). In 2018, Premcor also settled with the State of Illinois, which resulted in the dismissal of the BP Defendants from the State

Case. (*Id.*). Although both Premcor and Apex settled with the State of Illinois, Premcor continued to pursue contribution claims in the State Case against several pipeline companies (the "Pipeline Defendants"). (*Id.*). After reaching settlements with the Pipeline Defendants, the State Case was finally dismissed on August 23, 2023. (*Id.*).

Separate from the State Case, Premcor filed this action in 2017 under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, seeking contribution from the BP Defendants and Apex for the nearly $200 million in response costs that it will incur in remediating the contamination.

Due to the complexity of the case, the parties have agreed to a phased approach to discovery. The current phase of discovery, Phase 2, encompasses:

1. Facts concerning amounts that any party has incurred, or committed to incur, that could constitute costs of response of CERCLA, 42 U.S.C. §§ 9601-75 ("CERCLA Response Costs") that are the subject of this action;

2. Amounts that any party has received, or is entitled to receive, from any other person (other than in satisfaction of claims in this litigation), or that have been paid by any other person, to reimburse or defray CERCLA Response Costs incurred, or to be incurred, that are the subject of this action, including but not limited to payments by insurers, indemnitors or parties to other lawsuits; and

3. The applicability of the petroleum exclusion under 42 U.S.C. § 9601(14).

(Docs. 324, 358, 381).

Premcor served both the BP Defendants and Apex with discovery inquiring into insurance coverage and payments by and/or settlements with insurers related to cleaning up the Refinery. Premcor further served discovery requests on the

BP Defendants relating to releases and/or disposals from pipelines they owned and/or operated. (*See* Doc. 366). The BP Defendants and Apex also sought discovery from Premcor related to the State Case for the period after they were dismissed from the State Case. (Doc. 364). All parties have objected to certain discovery requests, leading to the instant motions to compel.

## LEGAL STANDARD

"District courts have broad discretion in discovery-related matters." *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., L.P.*, 46 F.4th 587, 601 (7th Cir. 2022). Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense," and public policy favors disclosure of relevant materials. *Nucap Indus. Inc. v. Robert Bosch LLC*, No. 15 CV 2207, 2017 WL 6059770, at *1 (N.D. Ill. Dec. 7, 2017) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Rayome v. Abt Elecs.*, No. 21 C 2639, 2024 WL 4119139 (N.D. Ill. Sept. 9, 2024) (quoting *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 930 (7th Cir. 2004)). The scope of discovery can be limited, however, where "the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Generally, objections to discovery must be stated with specificity. See FED. R. CIV. P. 33(b)(4); FED. R. CIV. P. 34(b)(2)(B)-(C).

## DISCUSSION

**I. Defendants' Motion to Compel (Doc. 364)**

Defendants' motion to compel is limited to the BP Defendants' Requests 4 through 10 and 12 and Apex's Requests 14 and 15. The BP Defendants seek:

4. All pleadings, motions, briefs, notices, orders and other documents filed by any party or non-party in the State case on or after July 26, 2018.

5. All interrogatories, requests for production, requests for admission, notices of depositions and other discovery requests served by any party in the State Case on or after July 26, 2018.

6. All interrogatory answers, written responses to requests for production, written responses to requests for admission and other discovery responses served by any party or non-party in the State Case on or after July 26, 2018.

7. All documents produced by any party or non-party in the State Case during the course of discovery in that case on or after July 26, 2018.

8. All expert reports and disclosures filed or served by any party or non-party in the State Case on or after July 26, 2018.

9. All transcripts of and exhibits to any and all depositions taken in the State Case during the course of discovery in that case on or after July 26, 2018.

10. All e-mails and other correspondence among or between two or more counsel for any party in the State Case dated on or after July 26, 2018, which in any manner pertained to discovery, or any issue relating to discovery, in the State Case.

12. All documents which reflect, evidence or pertain to how the price for Premcor's acquisition of the Hartford Refinery in 1988 was determined.

Document Requests 14 and 15 of Apex's Requests seek:

14. Expert reports from the State Court Action.

15. Deposition transcripts and exhibits for fact and expert witnesses in the State Court Action.

Defendants argue these requests are relevant because they seek documents and information involving what transpired in the State Case after they were dismissed from that case. Specifically, Defendants assert they are entitled to information regarding the claims and defenses asserted and evidence adduced as to who should bear responsibility for the alleged contamination at the Refinery. Notably, they argue, Premcor contended in the State Case that the entirety of the past and future remediation costs (above Premcor's share) should be allocated among the Pipeline Defendants and that Defendants in this case should not be listed on the verdict form. As a result, Defendants are entitled to full disclosure concerning the litigation that ensued in State Court. Defendants also assert that they are entitled to this discovery because it involves facts and issues that are inextricably intertwined with the issues in this case. For example, if Premcor asserted in the State Case that contamination at the Refinery consisted of material from petroleum pipelines, which falls under CERCLA's Petroleum Exclusion, then Premcor may be judicially estopped from asserting a contrary position in this case. To the extent Premcor argues these documents are publicly available, Defendants preemptively note that they seek documents not filed with the Court including expert materials, discovery, materials, or correspondence among counsel. Moreover, they argue, Madison County's court system does not make all documents available to the public.

In response, Premcor argues that there is no danger of Defendants being deemed liable for remediation costs already covered by the Pipeline Defendants because, under

binding precedent, any settlement credits from the State Case are applied by considering the actual dollar amounts Premcor already recovered. Thus, the only relevant information is the *amount* of the settlements at issue, which Premcor has already produced. Moreover, Premcor argues, it never asserted a contrary position in the State Case, and in any event, CERCLA prohibits double recovery of response costs. And the BP Defendants were left off the verdict form because they were not subject to the Illinois Joint Tortfeasors Contribution Act, while Apex had settled with the State and was dismissed from the lawsuit.

Moreover, Premcor argues, Defendants' requests are entirely overbroad and disproportionate to the needs of this case. Defendants seek seven years of litigation pleadings, discovery, depositions, exhibits, and expert reports for Premcor and six defendants, in addition to emails between all counsel for these seven parties. This, despite having received more than 540,000 pages of documents from the State Case already, all discovery from the State Case while Defendants were part of that action, and more than 23,000 additional pages produced by Precor in this lawsuit.

Upon considering Defendants' requests and Premcor's objections, the Court **ORDERS** as follows:

1. **BP Defendants' Requests for Documents**

**Request No. 4:** The Court finds that Premcor is not required to produce documents in response to Request No. 4. The information requested is equally available to the BP Defendants as it is to Premcor. While Defendants assert that Madison County does not provide easy electronic access court files, Defendants can visit the courthouse, if

necessary, to obtain copies of any publicly filed documents. Thus, Premcor's objections are **SUSTAINED**.

**Request Nos. 5, 6, and 7:** Premcor shall produce any and all answers, responses, admissions, and documents produced that it received in response to discovery requests it propounded, as well as any answers, responses, admissions, and documents that Premcor produced in response to a third party's discovery requests. As noted by the BP Defendants, they were parties to the Protective Order in the State Case, and both Premcor and Defendants are subject to a Protective Order in this case. Thus, Premcor's objections to Request Nos. 5, 6, and 7 are **SUSTAINED in part and OVERRULED in part**. Premcor is not obligated to produce any answers, responses, admissions, and documents produced by a third party in response to another third-party's request.

**Request No. 8:** The Court agrees that expert reports and disclosures filed or served by any party or non-party in the State Case may be relevant to the scope of Phase 2 discovery, including the applicability of the petroleum exclusion. Accordingly, Premcor's objections are **OVERRULED**.

**Request No. 9:** To the extent the BP Defendants attended depositions in the State Case after their dismissal, as indicated in Premcor's objection, the Court finds it unduly burdensome to require Premcor to produce the transcripts and exhibits to those deposition. Thus, Premcor's objections are **SUSTAINED in part and OVERRULED in part**. Premcor shall produce the deposition transcript and exhibits to any deposition that the BP Defendants did not attend.

**Request No. 10:** The Court agrees the request for all emails and other correspondence between counsel for any party in the State Case after July 26, 2018, "which in any manner pertained to discovery," is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Thus, Premcor's objections are **SUSTAINED**.

**Request No. 12:** Premcor's objections to this request are well taken. Premcor notes that the BP Defendants disclosed an expert report in the State Case on this issue, that it previously produced all information within its possession, custody, or control from its purchase of the refinery in 1988 from Apex, which was in bankruptcy, and that all conditions of the sale were set forth in the bankruptcy case. Furthermore, to the extent the BP Defendants filed its motion to compel jointly with Apex, the BP Defendants could have also requested this information from Apex. Premcor's objections are **SUSTAINED**.

2. **Apex's Requests for Production**

Like the BP Defendants, Apex has requested expert reports from the State Case, as well as deposition transcripts and exhibits for fact and expert witnesses in the State Case. Apex seeks these documents from the time period subsequent to its dismissal from the State Case on September 7, 2016. (Doc. 364 at p. 2).

**Request No. 14:** As with the BP Defendants, the Court **OVERRULES** Premcor's objection to providing expert reports from the State Case. Premcor shall produce any expert reports from the State Case that were filed or served after September 7, 2016.

**Request No. 15:** Premcor's objections are **SUSTAINED in part and OVERRULED in part**. Premcor shall produce the deposition transcripts and exhibits to any deposition that Apex did not attend.

## II. Premcor's Motion to Compel (Doc. 366)

Premcor also seeks an order from the Court compelling Defendants to produce certain information. Premcor states that, although the BP Defendants admit having obtained an insurance settlement covering the Refinery, they refuse to produce any documents regarding insurance. Likewise, Apex has refused to meaningfully search its insurance files related to settlements involving the Refinery. And the settlements that Apex has produced are highly redacted. Thus, Premcor moves the Court to compel: (1) the production of specific insurance information from Defendants; (2) relevant information related to releases and disposals from the BP Defendants' pipelines; and (3) redacted documents previously produced by Apex.

### A. *BP Defendants*

Premcor's motion indicates the BP Defendants have refused to produce any information or documents in response to Premcor's discovery requests regarding insurance. This, despite the BP Defendants' admission that Atlantic Richfield, which owned and operated the Refinery from 1950 to 1967, made claims related to pollution and reached settlements with one or more insurers related to the Refinery. The BP Defendants also admitted that Atlantic Richfield allowed insurers to buy back policies that covered claims for pollution at various properties, including the Refinery. The BP Defendants objected to Premcor's interrogatories and requests on the grounds of relevance because

the litigation "involves no claim by BP Pipelines for recovery of CERCLA response costs . . . ." (Doc. 366-8).

Premcor, however, asserts this information is relevant for four reasons. First, Defendants have denied any contribution to any contamination at the Refinery, so their representations to their insurers in order to obtain coverage are highly relevant. Moreover, Premcor argues, this information is not privileged, as Illinois courts have held claim files subject to discovery. Second, the requested insurance information is relevant to identifying response costs, as Defendants likely provided information to their insurers regarding potential clean-up costs at the Refinery. Third, any recovery of insurance proceeds through settlements are relevant to allocation of costs. Premcor notes that while discovery indicates Defendants have collected insurance proceeds to cover liabilities arising from contamination at the Refinery, they have not paid any costs toward remediation of that contamination. And fourth, the claims files should contain non-privileged information relevant to liability and allocation. Even though allocation is not being addressed in this phase of discovery, the fact that the files are relevant to liability necessitates their production.

Premcor also states that the BP Defendants have refused to produce relevant, responsive information regarding releases and/or disposals from their pipelines, despite admitting that BP Pipelines owned and operated a pipeline at the Refinery and that the substances it moved were crude oil or refined petroleum. The BP Defendants have maintained that any information regarding leaks, disposal, or releases is irrelevant and immaterial to this litigation. Premcor asserts this information is highly relevant to the

applicability of the petroleum exclusion and to whether the BP Defendants are "covered persons" under CERCLA.

Premcor moves the Court to issue an order compelling the BP Defendants to provide complete responses to Premcor's discovery requests and to produce all documents responsive to Premcor's requests for production regarding insurance and the pipeline. In response, the BP Defendants note that a party may not obtain contribution from third parties to CERCLA response costs that have been reimbursed by the claimant's insurer because the collateral source rule does not apply. Thus, where insurance information is relevant, it typically concerns a plaintiff's coverage, not a defendant's. Moreover, even if the information were relevant, Premcor has mischaracterized its admissions with regard to Atlantic Richfield. The BP Defendants actually stated that the settlements and buybacks "were not in the context of any claims having been asserted related to the Hartford Refinery." (Doc. 370 at p. 3). Thus, the BP Defendants claim, it is "highly misleading to state . . . that the BP Defendants recovered insurance proceeds for liabilities arising from the Refinery." (*Id.*). The BP Defendants argue that, at most, Premcor's discovery requests represent an effort to delve into the BP Defendants' general financial condition for purposes of preparing equitable arguments concerning how Refinery-related CERCLA response costs should be allocated, which is an inappropriate basis for requesting the discovery.

With regard to Premcor's request related to any releases and/or disposals from the BP Defendants' pipelines, Defendants assert Premcor is seeking information about

the alleged release of material that falls outside the scope of CERCLA and thus has no relevance to any aspect of this litigation.

In reply, Premcor cites persuasive case law stating that courts should take prior settlements into account as an equitable factor when allocating responsibility and awarding damages in a CERCLA action. *See Litgo N.J. Inc. v. Comm. N.J. Dept. of Env. Protection*, 725 F.3d 369, 390-91 (3d Cir. 2013) ("Based on CERCLA's general policy against double recovery . . . courts have found that prior settlements not governed by 42 U.S.C. § 9613(f)(2) should be taken into account as an equitable factor in allocating responsibility and awarding damages."); *K.C. 1986 Lmtd. Partnership v. Reade Mfg.*, 472 F.3d 1009 (8th Cir. 2009) (requiring court to consider settlements between potentially responsible party and private party in allocating response costs). Premcor argues that if the BP Defendants collected insurance proceeds to address contamination at the Refinery, but only Premcor has addressed the contamination, the insurance settlements the BP Defendants received should be allocated to Premcor to defray the cleanup costs. Thus, the Court should require the BP Defendants to produce the requested insurance settlements and related information. Premcor likewise refutes the BP Defendants' assertion that its request for information regarding any releases and/or leaks from the pipeline is irrelevant; even if the pipeline carried only cured oil or refined petroleum products, that information would still be relevant to the application of the petroleum exclusion.

Upon review of the parties' arguments, the Court agrees that any insurance files regarding settlements related to the Refinery are relevant and material to issues in this litigation. Furthermore, any documents relating to leaks, releases, or disposals from BP

Defendants' pipeline is relevant to the application of the Petroleum Exclusion. Thus, the Court **OVERRULES** the BP Defendants' objections. The BP Defendants are **ORDERED** to provide complete responses to Premcor's discovery requests and produce all documents responsive to Premcor's requests for production regarding insurance and the pipeline.

B. *Apex*

Unlike the BP Defendants, Apex has produced 28 settlements with insurers related to 2005 and 2008 coverage actions. It also has produced hundreds of policies. Yet, Premcor asserts there is additional relevant information located in the claims files regarding Apex's contamination at the Refinery. Premcor asserts Apex has an obligation to search for this responsive information—despite the fact that the material consists of 77,000 paper documents. Further, while it is true that the amounts Apex recovered for actual and anticipated response costs is relevant, the information exchanged with insurers is likely to be more specific, as the agreements often refer to other non-Refinery liabilities. Premcor contends it is entitled to know whether Apex settled for liabilities that it anticipated but has not yet incurred. Premcor also asserts the 94 insurance documents that Apex has produced have been improperly redacted. Premcor asks the Court to compel Apex to search and produce responsive information from its insurance claims and litigation files and to produce unredacted copies of the insurance documents listed on Apex's redaction log.

In response, Apex notes that its settlement agreements contain a confidentiality provision that prohibits Apex from disclosing any of the terms of the agreement absent

consent from the insurer or a court order. Apex states that it spent significant time negotiating with each of its insurers to make its production of documents. In negotiating with its insurers, Apex ensured that each settlement agreement, as produced, provided Premcor with information needed to determine the settlement amount and the subject matter of what Apex and its insurer was settling. If it now provided unredacted versions, it would be in breach of contract. Moreover, out of the 28 settlement agreements, only five contain redactions. And only two of those redact anything more than identifying information. Even those two still provide the amounts paid and the matters being settled.[1] Finally, Apex's settlements occurred years before the CERCLA case was filed, so no incurrence of CERCLA response costs would have been contemplated in any insurer-Apex communications. Apex also contends that it offered on numerous occasions to run targeted searches in order to identify documents responsive to Premcor's requests, but that Premcor failed to identify any search terms that would narrow the universe of documents or identify the documents that it seeks.

In reply, Premcor argues that Apex is seeking to avoid its discovery obligations because its files are old and unorganized. Premcor contends Apex must produce unredacted policies and settlements because it is impossible to tell whether the insurers settled obligations to pay for the costs of the Village of Hartford cleanup. Nor has Apex produced any information regarding representations it made to insurers when seeking coverage, which is relevant because, in the Refinery sales contract between Apex and

---

[1] One agreement, filed as an exhibit, has 17 of its 22 pages completely redacted with most of the others partially redacted. (Doc. 378-2).

Premcor, Apex expressly retained liability for "Environmental Claims" arising at the Refinery. With regard to its alleged failure to identify search terms, Premcor notes that it has suggested various ways of conducting the review, all of which Apex has declined.

The Travelers Intervenors filed a response to Premcor's Motion to Compel in July 2025, arguing that public policy favors respecting the confidentiality of the Travelers settlement agreement. Moreover, Premcor has no claim for coverage under the Travelers policies, and Apex has already provided Premcor with the relevant provisions from the Travelers settlement agreement. Travelers asks the Court to deny Premcor's Motion to the extent it seeks production of the Travelers settlement agreement without redactions and to award it costs and expenses in filing its opposition.

While the Court agrees with Premcor that Apex must produce claims files that are relevant and not privileged, it disagrees that the settlement agreements must be completely unredacted. Apex has established that it worked with each of its insurers to provide the information sought by Premcor, and only five of the agreements contain any redactions whatsoever. The Court is further persuaded by the Travelers Intervenors that public policy favors confidentiality in settlement agreements.[2]

To the extent Apex's 77,000 documents are searchable, Apex is **ORDERED** to search and remove files not related to the Refinery and to create a privilege log for any privileged materials. Premcor is **ORDERED** to develop search terms for the remainder

---

[2] The Court declines, however, to award any costs to the Travelers Intervenors for the cost of bringing its response.

of the documents, which Apex shall then produce to Premcor. For these reasons, Apex's objections are **SUSTAINED in part and OVERRULED in part**.

## Conclusion

Defendants' Motion to Compel (Doc. 364) is **GRANTED in part and DENIED in part**. Premcor's Motion to Compel (Doc. 366) is **GRANTED in part and DENIED in part**.

Under the Ninth Amended Scheduling Order, the parties must produce any documents compelled within this Order within **45 days** of its entry. Furthermore, the discovery schedule will proceed in accordance with the Ninth Amended Scheduling Order (Doc. 381), unless the parties move for a new operative scheduling order, and the Court enters such order.

**IT IS SO ORDERED.**

DATED: September 30, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**